CHARLES E. HARTFORD *vs.* NANCY M. HARTFORD.

No. 01-P-1711.

Norfolk. May 16, 2003. - February 12, 2004.

Present: GELINAS, DUFFLY, & COHEN, JJ.

*Libel and Slander. Judgment,* Preclusive effect. *Collateral Estoppel. Estoppel. Probate Court,* Judgment, Divorce. *Privileged Communication. Abuse of Process. Practice, Civil,* Attorney's fees.

In a civil action alleging that the defendant former wife defamed the plaintiff former husband by making false statements to the former husband's parole officer and others, the judge erred in determining that the findings of a Probate Court judge in connection with the parties' divorce established the falsity of the former wife's statements, where the parties in the divorce action had stipulated to the reason for the divorce, and therefore, the issue of the verity of the former wife's statements was not actually litigated in that action [450-451]; however, the judge properly granted summary judgment in favor of the former wife on the ground that her statements to the parole officer were absolutely privileged [451-454].

This court affirmed the dismissal of a counterclaim of abuse of process in a civil action for defamation, and denied the plaintiff in counterclaim's request for attorney's fees incurred in the defense of the defamation action, where the issue in that action had not previously been determined in this jurisdiction and the claim was therefore not insubstantial. [454-455]

CIVIL ACTION commenced in the Superior Court Department on December 8, 1998.

The case was heard by *Patrick J. King,* J., on motions for summary judgment.

*Dale E. Grant* for the plaintiff.

*Elaine F. Gordon* for the defendant.

DUFFLY, J. Charles E. Hartford appeals from the entry of summary judgment dismissing his complaint against his former wife, Nancy M. Hartford. In his complaint, Charles alleges that Nancy defamed him by making false statements to his parole officer and others. We do not agree that the falsity of Nancy's

statements was established by findings of a Probate Court in connection with the parties' divorce. However, because we agree that the statements, even if false, were absolutely privileged, we affirm.

*Background facts and proceedings.* The parties married in December, 1987, while Charles was on parole after serving seventeen years in prison for the murder in the first degree of his first wife and another person.[1] Nancy was Charles's third wife. On June 13, 1996, Charles's parole officer, Dana White, made a routine, unannounced visit to the parties' home. Charles was at work, but Nancy was home. Nancy told White that she was afraid of Charles and experiencing marital problems because Charles was following her to work and accusing her of being unfaithful. White advised Nancy to call the police and to obtain a G. L. c. 209A protective order. She did not do so that day.

The next day, June 14, 1996, White contacted Charles at work and informed him of his wife's statements. Charles denied the existence of any marital problems and White ended the conversation by telling him not to abuse Nancy and to report to the parole office the next day. Soon after this conversation, Charles left work for home to confront Nancy about her conversation with his parole officer. The nature of the confrontation, which took place over an approximately thirty to forty-five minute period, was the subject of testimony in court proceedings between the parties relating to the following actions: a complaint by Nancy filed in the Uxbridge District Court, in which she sought and obtained an abuse prevention order against Charles pursuant to G. L. c. 209A; and cross claims for divorce, filed in Worcester Probate and Family Court, in which the parties were each granted a divorce on their stipulation that the marriage had suffered an irretrievable breakdown.

Charles's defamation claim focuses on statements made by Nancy to White, to the police who were called to the house following the incident, and during the c. 209A proceedings. We draw our summary of Nancy's allegedly false statements from her affidavit in support of the c. 209A order, White's written

---

[1]As the Superior Court judge found, prior to Charles's release on parole, the sentence had been commuted to forty-five years to life.

report of all contacts concerning Charles, Nancy's complaint filed with the Millville police department, and a police officer's narrative report. Nancy said that Charles had arrived home at about 3:30 P.M. very angry and verbally attacked her for having made the statements to White the day before. He ordered her into the bedroom and, using profanities, demanded that she never speak to his parole officer again. He yelled at her and said that she had not "seen [him] mad yet." When she attempted to leave the bedroom to check on the four grandchildren who were visiting, he prevented her from leaving by blocking the door and forcing her back onto the bed. He let her go only after she reminded him that the children's parents would soon be arriving to pick them up. At about 5:50 P.M., White telephoned the house and Nancy answered, relating to him the foregoing. According to a police officer's narrative report, Millville police were called to the parties' residence at about 6:00 P.M., where they were met by Nancy, who repeated to the responding officers essentially what she had told White. She thereafter also filed a complaint with the police to the same effect. The police took Charles into custody.

At a revocation of parole hearing, the parole board determined that Charles had violated the conditions of his parole, at least in part on the basis of the June 14 events as related by Nancy to the parole officer.[2] Charles was recommitted to serve the remainder of his life sentence.

On June 28, 1996, Nancy filed a complaint in Uxbridge District Court seeking protection from abuse, pursuant to G. L. c. 209A, and an order entered prohibiting Charles from abusing Nancy. After a hearing on July 5, 1996, the order was extended for one year.

In December, 1996, Nancy filed a complaint for divorce and Charles filed a counterclaim. Although the parties initially

---

[2]The record reflects that a preliminary hearing was conducted on June 26, 1996, resulting in the recommendation of revocation of parole, based on Charles's conduct directed towards Nancy on and before June 14, 1996, and based on his physical assault of his second wife, which resulted in the imposition of a requirement that he attend marital counseling, a condition which he violated. Charles does not dispute the assertion in Nancy's brief that a hearing before the parole board was thereafter conducted on December 20, 1999, which resulted in the revocation of his parole.

sought a divorce on grounds of cruel and abusive treatment, the Probate Court findings reflect that "[t]he parties . . . stipulated to G. L. c. 208, § 1B [irretrievable breakdown] grounds for divorce." Thus, as further reflected in the findings and conclusions of the Probate Court, the only issue to be resolved by the trial judge was with respect to the parties' cross claims for equitable distribution of marital property pursuant to G. L. c. 208, § 34.[3] The detailed findings (numbering 132 in all) are set out under headings roughly correlating to the mandatory factors to be considered in making a property distribution or alimony award under § 34, except that there was no separate category for "conduct."[4] Under the heading, "The Marriage and Former Marriages of the Parties," nineteen of the sixty-six numbered paragraphs relate to the June 14 incident. The findings reflect that the Probate Court judge did not credit Nancy's version of what had transpired on June 14, 1996, but accepted Charles's version: that twenty minutes after the call from White, he left work for home and, once there, had a conversation with his wife in their bedroom in which Charles asked his wife if she wanted a divorce and told her that if she did, he wanted half of the house; Nancy asked him to vacate the house, but he refused and then left to get something to eat before going outside to mow the lawn; he had neither held her captive nor verbally assaulted her.

On the strength of the Probate Court findings, Charles then

---

[3] The divorce judgment awarded to Nancy $65,450 of the total equity in the marital home, determined by the judge to be $70,500. This represented a return to Nancy of her initial $60,000 contribution to the purchase of the marital home, and an equal division of the remaining equity. The judge found that Charles had "substantially improved and maintained the residence." The parties were to retain their respective pensions. Other assets (furniture, automobiles) were divided substantially equally.

[4] General Laws c. 208, § 34, provides, in relevant part:

"In determining the amount of alimony, if any, to be paid, or in fixing the nature and value of the property, if any, to be so assigned, the court, after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income."

filed a complaint in Superior Court, asserting that Nancy's statements regarding the June 14 incident, made to his parole officer, the Millville police department, and the Uxbridge District Court, were false and malicious. In his motion for summary judgment he argued that the Probate Court findings regarding the falsity of Nancy's statements as to the events of June 14 precluded relitigation of that issue. Nancy filed a cross motion for summary judgment, arguing that she was not barred from litigating the issue, and that even if barred, the statements were absolutely privileged.

The Superior Court judge gave preclusive effect to the Probate Court's findings, concluding that the "the issue of whether Nancy made the statements concerning spousal abuse and whether the statements were made falsely was central to the previous [Probate Court] adjudication and are the same issues presented in the current defamation action." Notwithstanding this determination, the Superior Court judge also concluded that Nancy had an absolute privilege to make the statements, entitling her to summary judgment.

On appeal, Charles (correctly, in our view) does not contest the Superior Court judge's determination that any defamatory statements made by Nancy to the police and to the District Court judge in connection with her request for a c. 209A restraining are absolutely privileged. We focus on his related claims that Nancy's statements to the parole officer were false and that they were not protected by absolute privilege.

*Discussion.* 1. *The defamation claim.* With the well-established standard of review of a grant of summary judgment in mind, see *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), we briefly address the judge's determination that the issue of the falsity of Nancy's statements had been determined in the divorce action.

(a) *Issue preclusion.* "The doctrine of issue preclusion provides that when an issue has been 'actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim.' " *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531

(2002), quoting from Restatement (Second) of Judgments § 27 (1982).

A judgment of divorce settles only those "matters which were necessarily involved and all issues which were actually tried and determined." *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367 (1985), quoting from *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949). Here, the parties stipulated that the marriage had suffered an irretrievable breakdown and the judgment of divorce entered on that basis. An issue is not "actually litigated if it is the subject of a stipulation between the parties." Restatement (Second) of Judgments § 27, comment e (1982).

To the extent that the Probate Court judge considered, and rejected, Nancy's claims about the June 14 incident as a factor in the division of marital property pursuant to G. L. c. 208, § 34, Nancy had no incentive to appeal the equitable distribution portion of the judgment because that property division favored her. "If review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of [issue preclusion] is inapplicable by its own terms." Restatement (Second) of Judgments § 28 comment a (1982). See *Jarosz* v. *Palmer*, *supra* at 536.

The doctrine of issue preclusion is inapplicable to the Probate Court findings regarding the June 14 incident. Had it applied, Nancy would still be entitled to summary judgment because even if her statements are established to have been falsely made, Nancy was absolutely privileged to make them. We turn to a discussion of that issue.[5]

(b) *Absolute privilege.* "A witness is absolutely privileged to publish defamatory matter concerning another in communica-

---

[5]Neither party discusses the doctrine of conditional privilege, and as is implicit in our discussion, *infra*, we conclude that in the circumstances of this case, Nancy's statements to the parole officer when he called the home to check on Charles were entitled to absolute, and not conditional, privilege. See *Correllas* v. *Viveiros*, 410 Mass. 314, 322 (1991) ("there are many cases which hold that the report of a crime is only conditionally privileged. In most of those cases, however, the defendants went to the police, or communicated with others, on their own initiative and published an accusation which might otherwise never have been known"). Contrast *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 387 (1978) (conditional privilege provides sufficient incentive to testify in labor grievance hearing, where witness is not subject to control of judge).

tions preliminary to a proposed judicial proceeding . . . if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977). The proceeding must be "actually contemplated in good faith and under serious consideration by the witness or a possible party to a proceeding" when the statements are made. Restatement (Second) of Torts § 588 comment e (1977). See *O'Connell* v. *Bank of Boston,* 37 Mass. App. Ct. 416, 421 (1994) (employer's statement initiating criminal charges was absolutely privileged); *Sietins* v. *Joseph,* 238 F. Supp. 2d 366, 378-379 (D. Mass. 2003) (statements made by police falsely accusing plaintiff of crime were made in context of seeking criminal complaint and absolutely privileged).

Relying on *Correllas* v. *Viveiros,* 410 Mass. 314, 319-320 (1991) (holding that alleged defamatory statements made when police and prosecutors were contemplating criminal action or other judicial proceedings were absolutely privileged),[6] the Superior Court judge determined that Nancy's statements to White when he called the house on June 14 (as well as her statements about the incident made to Millville police and the Uxbridge District Court) were absolutely privileged. Charles challenges so much of the decision concluding that an absolute privilege is extended to the statements made to White, his parole officer, arguing that the statements were not made in the course of a judicial proceeding.

We agree with the Superior Court's determination that "[a] parole officer supervising a parolee is in a position analogous to the police officer in *Correllas.* [White] had a duty to monitor Charles' conduct to make sure he complied with the terms of his parole. . . . It is essential that persons furnishing information about the parolee's behavior can do so without 'laboring under the threat of a civil law suit.' [*Correllas* v. *Viveiros,* 410 Mass. at 323]."

---

[6]In *Correllas, supra* at 315, after $8,000 was discovered missing from a vault at a bank which employed the plaintiff and the defendant, local police began an investigation during which the defendant confessed to stealing $4,000, but claimed that the plaintiff had orchestrated the theft. At the time these statements were made, no formal proceedings had yet commenced against the plaintiff who, following the statements, was charged with larceny. Acquitted at trial, the plaintiff then brought a defamation suit against the defendant.

A parolee is under constant supervision by the parole board, and violations of the terms of parole trigger a quasi judicial parole revocation hearing, see G. L. c. 27, § 5(*a*), and 120 Code Mass. Regs. § 303.24 (1993),[7] in which it is determined whether the parolee has violated the terms of his parole and must be returned to prison.

Information that may subject a parolee to a parole revocation hearing is obtained by the parole officer through the parole officer's contacts with the parolee and the members of the community in which the parolee resides. The contacts are in the nature of an ongoing investigation and enable the parole officer to scrutinize and assess whether the parolee's conduct in the community and behavior towards others may have an impact on his parole status. See G. L. c. 27, § 5(*b*). An important component of this ongoing investigation is information gathered from the parolee's family or others in contact with him. We think that community members must feel free to provide pertinent information about a parolee to a parole officer without fear of reprisal, including a defamation suit, and that the conduct of a hearing before the parole board serves as a sufficient safeguard against inaccurate or false information. See *Correllas* v. *Viveiros*, 410 Mass. at 320 ("An absolute privilege is favored because any final judgment may depend largely on the testimony of the party or witness, and full disclosure, in the interests of justice, should not be hampered by fear of an action for defamation"). See also Restatement (Second) of Torts § 588 comment d (1977) ("Judicial proceedings include all proceedings in which an officer or tribunal exercise judicial functions . . .").

---

[7]Relevant regulations in effect at the time of Charles's parole revocation hearing (which, with modifications not relevant here, continue to be in effect), provide that a parolee is entitled to receive a written notice of the time and place of the hearing and notice of the charges against him prior to the final revocation hearing. See 120 Code Mass. Regs. § 303.19. A parolee may also be represented by an attorney, request disclosure of documents to be used by the parole hearing panel at the hearing, and present documentary evidence and witnesses; a parolee also has the right to examine any adverse witnesses. See 120 Code Mass. Regs. §§ 303.22-303.24 (1993). If the hearing panel finds, by substantial evidence, that a condition of parole has been violated, the parole board shall affirm the revocation of parole and send to the offender a written notice of the decision and a summary of the reasons for its decision. See 120 Code Mass. Regs. §§ 303.25-303.26 (1993).

Other jurisdictions having decided the issue agree. See, e.g., *Cole* v. *Star Tribune*, 581 N.W.2d 364, 367, 369 (Minn. Ct. App. 1998), quoting from *Oakman* v. *Eveleth*, 163 Minn. 100, 108-109 (1925) (in defamation action brought by prisoner against victim's nieces, niece's letters, possibly pertinent to hearing before board of pardons, were absolutely privileged; board of pardons was described as "quasi-judicial entity because it applies 'deliberate human judgment based upon evidentiary facts of some sort commanding the exercise . . . of discretionary power' "); *Burgess* v. *Silverglat*, 217 Mont. 186, 188 (1985) (psychiatrist's report about defendant's mental state, submitted to court and later used by parole board in parole hearing and prerelease screening, was absolutely privileged); *Pulkrabek* v. *Sletten*, 557 N.W.2d 225, 228 (N.D. 1996) (prisoner asked prosecutor to write letter to parole board on his behalf; allegedly libelous statement made by prosecutor to parole board was absolutely privileged); *Vasquez* v. *Courtney*, 276 Or. 1053, 1055-1056 (1976) (information provided in letter sent by sheriff to parole officer conducting presentence investigation was absolutely privileged; preparation of presentence investigative report is "closely related" to sentencing process and "incidental aspect of the criminal proceeding"; there is "a public need for the frank disclosure of relevant information" in preparing presentence report).

On this basis, we affirm the order for summary judgment in favor of the defendant.

2. *Abuse of process counterclaim.* We affirm the denial of Nancy's motion for summary judgment on her counterclaim and the dismissal of that claim. Nancy alleged that the filing of the defamation complaint was an abuse of process and that she was entitled to attorney's fees under G. L. c. 231, § 6F. There is nothing in the record before us indicating the basis for Nancy's assertions that Charles filed the defamation action to "exact revenge" after failing, in the divorce action, to receive one-half of the marital estate as he had requested.[8] In any case, Nancy's argument on appeal focuses solely on the denial of her claim

---

[8] See *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, 437 Mass. 396, 407 (2002), describing the claim for abuse of process as follows: "the use of lawful process primarily for a purpose for which it is not designed. . . . The ele-

for attorney's fees incurred in the defense of Charles's action. She argues that, pursuant to G. L. c. 231, § 6F, she is entitled to such fees on the basis that Charles's "claims [were] wholly insubstantial." Because the issue as to the privileged nature of communications to a parole officer has not previously been determined in this jurisdiction, the claims were not insubstantial and on that basis Nancy's counterclaim was properly dismissed.

*Conclusion.* The judgment dismissing Charles's complaint on Nancy's motion for summary judgment is affirmed. The judgment dismissing Nancy's counterclaim is also affirmed.[9]

*So ordered.*

---

ments of an abuse of process claim are that: '(1) "process" was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage' " (citations omitted).

[9]Nancy's request for attorney's fees and costs in connection with this appeal is denied.