2012 VT 49

Moira LAMAY f/k/a Moira Conway v.
STATE of Vermont

[49 A.3d 559]

No. 11-162

¶ 1. June 14, 2012. Plaintiff, a former Vermont state trooper, appeals from a summary judgment in favor of the State on her claim of employment discrimination. Plaintiff contends the trial court erred in: (1) finding that she had presented insufficient evidence of gender bias as a motivating factor in her discharge; and (2) declining to consider the allegations in her complaint to the Vermont Human Rights Commission. We affirm.

¶ 2. The record discloses the following undisputed facts; additional material facts will be set forth in the discussion which follows. Plaintiff voluntarily resigned from her position as a state trooper in February 2002, and was rehired in August 2003. In October 2004, following an internal investigation, plaintiff admitted that she violated state police policy by filing a report concerning a high-speed chase that contained factual errors and inaccuracies. She accepted a letter of reprimand. Shortly thereafter, plaintiff became the subject of a second internal affairs investigation stemming from a traffic stop and drug-seizure that had occurred about a year earlier. The issue came to light when a deputy state's attorney learned of discrepancies between plaintiff's affidavit and deposition testimony and a police videotape of the incident. The state's attorney informed plaintiff's supervisor. Plaintiff was suspended with pay pending the investigation, and the following day asked a fellow officer to dispose of some marijuana in her desk that she considered a "loose end" from an

earlier matter. This was reported to her supervisor as well, and resulted in a third referral to internal affairs. Plaintiff was ultimately charged with providing false and inaccurate statements, and misuse of evidence.

¶ 3. In July 2005, plaintiff received a letter of dismissal from the Commissioner of Public Safety. The Commissioner cited the prior reprimand and the "overwhelming evidence" in support of the additional charges. Plaintiff thereafter filed a complaint with the Vermont Human Rights Commission but ultimately withdrew the charge and filed suit against the State, alleging she was discharged because she was a "single woman and single mother," in violation of the Vermont Fair Employment Practices Act, 21 V.S.A. §§ 495-496 (FEPA) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

¶ 4. The State moved for summary judgment, asserting that plaintiff failed to adduce evidence sufficient to show that gender was a motivating factor in her discharge, or to support such an inference. Plaintiff opposed the motion, claiming that she had adduced direct evidence of discrimination by the State — principally statements attributed to her supervisor, Lt. Harrington, following her discharge to the effect that plaintiff was "a single mother and continually had problems with day care," that she had been compelled "to call in late due to issues with daycare availability," and that she was "sometimes not . . . available for call outs because of this need to care for her child." Plaintiff also alleged that she had adduced evidence of disparate treatment and a hostile work environment.

¶ 5. The trial court issued a written ruling in March 2011. The court concluded that plaintiff's evidence, at best, "constitute[d] weak circumstantial evidence" and was insufficient to show that gender bias was a motivating factor in the State's decision. Moreover, even if suffi-

cient to establish a prima facie case of discrimination, the court found that the State had produced ample evidence of nondiscriminatory grounds for plaintiff's termination and that plaintiff, in turn, had not shown that the State's grounds were pretextual. Accordingly, the court granted the motion, and entered final judgment in favor of the State. Plaintiff's motion for reconsideration was denied. This appeal followed.

¶ 6. We review summary judgments under the same standard as the trial court, affirming when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Campbell v. Stafford*, 2011 VT 11, ¶ 10, 189 Vt. 567, 15 A.3d 126 (mem.). The nonmoving party is entitled to the benefit of all reasonable doubts and inferences. *Id.*

¶ 7. Plaintiff contends the trial court erred in concluding that the evidence was insufficient to establish "mixed motive" discrimination entitling her to a trial on the merits. The claim implicates settled standards that govern the burdens of proof under FEPA and Title VII. See *Robertson v. Mylan Labs, Inc.*, 2004 VT 15, ¶ 32, 176 Vt. 356, 848 A.2d 310 (noting that "we have generally followed the burden allocation rules applicable to Title VII"). We have explained that, "[u]nder a mixed motive analysis, which is guided by *Price Waterhouse* [*v. Hopkins*, 490 U.S. 228, 241 (1989)], a plaintiff has the initial burden of showing that the adverse employment action at the moment it was made was motivated by a mixture of legitimate and illegitimate reasons. Once the plaintiff shows that the decision was at least partially motivated by an illegitimate reason, the burden then shifts to the employer to show that the same decision would have been made even if the illegitimate reason had not been considered." *McIsaac v. Univ. of Vt.*, 2004 VT 50, ¶ 36, 177 Vt. 16, 853 A.2d 77 (quotation and emphasis omitted).

¶ 8. This standard has traditionally been distinguished from the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), which applies when the plaintiff establishes a prima facie case by showing he or she is a member of a protected group, was qualified for the position, and suffered an adverse employment action under circumstances that "permit an inference of discrimination." *Robertson*, 2004 VT 15, ¶ 25. In these circumstances, a presumption of discrimination arises and the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *McDonnell Douglas*, 411 U.S. at 802; accord *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 159, 624 A.2d 1122, 1127 (1992). If the employer meets this burden, the presumption disappears, "and the burden then shifts back to the plaintiff to prove that the employer's justification is a mere pretext for discrimination." *Robertson*, 2004 VT 15, ¶ 27.

¶ 9. As noted, plaintiff rests her claim on the mixed-motive *Price Waterhouse* framework and maintains that her evidence was sufficient to show that gender was a motivating factor in her discharge. Although plaintiff makes several valid preliminary points, the claim is ultimately unpersuasive. Thus, we agree at the outset that characterizing evidence as circumstantial, as the trial court did below, is unimportant in determining whether it is sufficient to show improper motive. See *In re McCort*, 162 Vt. 481, 492, 650 A.2d 504, 511 (1994) (declining to read *Price Waterhouse* as requiring direct evidence of discriminatory motive and observing that "[o]ur decisions have clearly authorized the use of circumstantial evidence to show that one of the employer's motives was improper in mixed-motive cases").[1]

_____
[1] Our holding in *McCort* essentially forecast — and is entirely consistent with —

We also agree that evidence of stereotyping single mothers and mothers with young children may show gender bias. See, e.g., *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 121 (2d Cir. 2004) (rejecting assertion that comments in the workplace about the commitment of mothers with young children "cannot, without comparative evidence of what was said about fathers, be presumed to be 'on the basis of sex' ").

¶ 10. Plaintiff's difficulty here is that her evidence, whether characterized as direct or circumstantial, was insufficient to support a finding that gender or gender stereotyping was a motivating factor in her termination. "Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision." *Price Waterhouse*, 490 U.S. at 251. Thus, "stray" remarks in the workplace can suggest a stereotyped attitude or hostile environment but do not necessarily dem-

onstrate an illegitimate motive sufficient to require the employer to prove that its decision was based on legitimate criteria. *Id.* The remarks attributed to plaintiff's supervisor, Lt. Harrington, fall in this category.[2] As the trial court found, his comments following plaintiff's termination were essentially descriptive of actual problems plaintiff had with childcare — plaintiff conceded in her opposition to the motion for summary judgment that she "had trouble getting childcare on immediate call-ins" — and do not convey the kind of invidious gender stereotyping that has been found sufficient to show discriminatory motive. Cf. *Chadwick v. Wellpoint, Inc.*, 561 F.3d 38, 42 (1st Cir. 2009) (informing plaintiff that she was denied promotion not because of what she "did or didn't do" on the job but rather because she had "kids and . . . a lot on your plate" held sufficient to demonstrate that gender-based stereotype concerning mothers with young children played role in decision); *Back*, 365 F.3d at 115 (holding that tenure evaluations questioning whether plaintiff should "reconsider whether [she] could be a mother and do this job," expressing concern as to whether plaintiff "could possibly do this job with children," and opining that the job was "not for a mother" were sufficient

---

the U.S. Supreme Court's holding in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100-01 (2003), that, under Title VII as amended by the Civil Rights Act of 1991, a plaintiff may prove improper motivation by either direct or circumstantial evidence. The 1991 Civil Rights amendments also made clear that an unlawful employment practice is established if an employment decision was motivated by an improper factor even though other factors also motivated the decision, and altered the remedial scheme by allowing injunctive relief even where the employer is able to establish as an affirmative defense that it would have taken the same action in the absence of the impermissible motivating factor. 42 U.S.C. §§ 2000e-2(m) & 2000e-5(g)(2); see *Desert Palace*, 539 U.S. at 94. In view of our holding that plaintiff's evidence was insufficient to show that gender was a motivating factor in her discharge, neither of these amendments is relevant here.

---

[2] Like the trial court here, we assume without deciding that any discriminatory animus by Lt. Harrington — plaintiff's supervisor who filed the complaints — could be attributable to the ultimate decisionmaker. See *Staub v. Proctor Hosp.*, ___ U.S. ___, ___, 131 S. Ct. 1186, 1194 (2011) (holding that employer may be liable for discriminatory employment decision "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action" (emphasis omitted)).

to show that gender-based stereotypes played a part in denial of tenure); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) (holding that employer's questioning of plaintiff's "ability to balance her current work and parental responsibilities" and "to fulfill her work responsibilities should she have a second child" was sufficient evidence of discriminatory motive to avoid summary judgment). Accordingly, we agree with the trial court that the evidence did not support a finding that plaintiff's status as a woman or a single mother was a motivating factor in her discharge.

¶ 11. In opposing the motion for summary judgment, plaintiff also relied to a lesser extent on evidence allegedly showing that the state police treated similarly situated officers more favorably than plaintiff. Upon examination, however, the evidence does not support the claim of improper gender-based discipline. Plaintiff contended, for example, that two other officers — a state trooper and a municipal police officer — involved in the same vehicle stop that resulted in the second disciplinary investigation made similar inconsistent statements about the incident, but were not similarly disciplined. As the trial court found, however, nothing in the record showed that the complaining prosecutor was either aware of the other state trooper's alleged misstatements or referred the matter to Lt. Harrington for investigation. The second officer was female and not employed by the state police, but by a municipal police department, and so presented no evidentiary value for purposes of finding disparate treatment by the State.

¶ 12. Plaintiff also claimed that she was compelled to live near her assigned barracks while a male trooper was exempted from this requirement. Even if true, plaintiff did not allege or show that she and the other officer were similarly situated. See *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 19, 175 Vt. 413,

834 A.2d 37 ("To establish circumstances giving rise to an inference of gender discrimination, a plaintiff may show that she was treated differently from a similarly situated male employee."). Indeed, plaintiff does not expressly dispute the State's assertion that the male sergeant in question was granted a waiver from the requirement because he was differently situated due to overseas deployment.

¶ 13. Plaintiff also cited an incident of another trooper referred to Lt. Harrington by the state's attorney's office for sworn misstatements that did not result in similar discipline. The trial court found plaintiff's evidentiary support lacking, however, noting that the claimed referral was not in evidence, and the court later rejected — as filed too late — the deputy's affidavit in support of plaintiff's motion for reconsideration. The court was fully entitled to reject the supplemental evidence as untimely. See *Bostock v. City of Burlington*, 2011 VT 89, ¶ 17, 190 Vt. 582, 30 A.3d 651 (mem.) (observing that it was plaintiffs' "burden to prove their case during the pendency of the summary judgment motions by putting forth sufficient evidence" and thus holding that trial court did not abuse its discretion in denying motion for reconsideration). Furthermore, the belated proffer suggested only that the deputy discovered and reported an inconsistency in the officer's affidavit; there was no clear proof that the trooper was neither investigated nor disciplined as plaintiff claimed.

¶ 14. Plaintiff also claimed disparate treatment in being disciplined for asking another officer to dispose of the marijuana in her desk. Plaintiff relied on testimony from a state police sergeant that it was a common practice among troopers not to follow protocol in the disposal of small amounts of seized drugs. As the trial court found, however, the issue was not whether other troopers failed to follow the rule, but "how they were treated" where, as here, the violation was reported

by a fellow trooper. Furthermore, the sergeant acknowledged that the circumstances were distinguishable where, as here, plaintiff was specifically directed by her supervisor to "follow-up" on the case in question and "[i]f a smaller amount of marijuana is involved and you can apply for a search warrant, do so." Accordingly, we discern no error in the trial court's finding that the evidence failed to support plaintiff's claim that her termination was motivated by gender.

¶ 15. Lastly, plaintiff faults the trial court's refusal to consider the allegations in her complaint to the Human Rights Commission because she had not sworn to the truth of its contents. Notably absent from her argument on appeal, however, is any claim that the alleged error was prejudicial. See *Boehm v. Willis*, 2006 VT 101, ¶ 12, 180 Vt. 615, 910 A.2d 908 (mem.) (noting that trial court's evidentiary rulings will not be disturbed absent an abuse of discretion resulting in prejudice to party's substantial rights). Moreover, even if the complaint were considered, its allegations are based largely on "information and belief," inadmissible hearsay, and conclusory allegations insufficient to provide a factual basis to evaluate the claim of improper motivation.[3] See *Starr Farm*

*Beach Campowners Ass'n v. Boylan*, 174 Vt. 503, 506, 811 A.2d 155, 160 (2002) (mem.) (upholding trial court's finding that affidavit contained "wholly conclusory" statement, as it supplied no factual basis for court to evaluate, and thus was insufficient to defeat motion for summary judgment); *Creaser v. Bixby*, 138 Vt. 582, 584, 420 A.2d 102, 103 (1980) (holding that allegations based on inadmissible hearsay "are not supporting affidavits" sufficient to defeat summary judgment). Accordingly, the complaint did not support a claim of disparate treatment motivated by gender.

¶ 16. To be clear, we agree with plaintiff's assertion that a factually-established pattern of disparate treatment and gen-

---

[3] Plaintiff's complaint to the Commission contained numerous unsupported allegations of hostile work environment and disparate treatment. In this regard, she alleged — without adducing and citing specific evidence — that she was denied the opportunity afforded other troopers to share "on call" duty; that she was denied leave to work toward a college degree, in contrast to a male trooper who "used to do" college work while on duty; that she was publicly reprimanded for offenses that were dealt with privately for male troopers; and that rumors of disputed origin about sexual affairs made her working conditions formal and stilted. Also in the complaint were hearsay allegations that she was told by another trooper to "fly low" because "they" were "gunning" for her; that two sergeants advised her that she was "in the Lieutenant's cross-hairs," and that she had heard of, but had not seen, an email by the lieutenant intended to portray her in a bad light by "saying something to the effect of 'let bygones be bygones.'" The complaint related further, but without any particularized gender-based context, that her supervisors asked whether she was afraid while on duty and that her training officer described another female trooper who had children as "not a team player." The complaint further alleged that, in response to her concerns, Lt. Harrington told plaintiff that he had contacted the personnel department's sexual harassment liaison to report that he may have been creating a hostile work environment and he directed plaintiff to talk to the liaison. Lt. Harrington acknowledged the self-report in his deposition testimony. The trial court found, however, that the request for an investigation did not establish that a hostile environment existed or was fueled by gender prejudice, and plaintiff has not shown that this finding was erroneous.

der stereotyping may circumstantially support an inference that a specific employment decision was improperly motivated. See, e.g., *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 845-46, 860 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003) (upholding discrimination claim where plaintiff proved that she was subjected to vulgar sexual slurs at work, was suspended for three days when she filed a complaint about the abuse, was told that a male co-worker "has a family to support" when she complained about differential treatment in overtime assignments, and ultimately was terminated for a physical altercation that netted the other employee involved, a male co-worker, a mere five-day suspension). As the trial court here correctly concluded, however, plaintiff failed to adduce evidence that her discipline was gender-motivated. Accordingly, we find no basis to disturb the judgment.

*Affirmed.*