NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 73

No. 2016-021

| | |
|---|---|
| Darren Couture | Supreme Court |
| v. | On Appeal from<br>Superior Court, Franklin Unit,<br>Civil Division |
| Britini Trainer and Caitlynn Trainer | |
| | September Term, 2016 |

Thomas Z. Carlson, J.

Darren Couture, Pro Se, Newport, Plaintiff-Appellant.

Caitlyn Trainer, Pro Se, St. Albans, Defendant-Appellee.

Jean L. Murray, Vermont Legal Aid, Inc., Montpelier, for Defendant-Appellee Britini Trainer.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **REIBER, C.J.**    Father appeals from a summary judgment order dismissing his defamation, negligence, and monetary claims against mother and her sister (aunt). In his complaint, father alleged that mother and aunt coached daughter into saying "Daddy hit me" and submitted defamatory audio and video recordings of daughter's statements to his parole officer. Father also alleged that mother made false statements to his parole officer and in mother's petition for relief from abuse. The trial court ruled that these recordings and statements were absolutely privileged. Father also brought several monetary claims against mother premised on his allegation that he had loaned money to mother. The exact legal theories behind these monetary claims were not explicitly detailed in father's complaint, and the trial court imputed legal theories to those

claims before dismissing them. On appeal, father argues that the court (1) erred in concluding that the recordings and statements are protected by absolute privilege and that they should instead be protected only by qualified privilege, (2) erred in dismissing his monetary claims against mother, and (3) abused its discretion in denying his motion for a court-appointed expert. We affirm the superior court's entry of summary judgment on all claims except for those monetary claims indicated below.

¶ 2. Because the trial court resolved this case on summary judgment without making findings regarding all the facts, the following recitation of facts comes from father's complaint, mother's response, and various affidavits filed by the parties in the trial court. After father's release on parole from prison, father and mother began a relationship and had daughter together. Father, mother, and daughter lived together in an apartment. As part of his plan that he and mother would eventually buy a house together, father not only paid the rent for December 2013 and paid off mother's credit card bills, but also paid the apartment's power bill, half the rent for a shared storage unit, and other similar expenses. During that same month, the couple had a falling out and ended their relationship, and father was escorted from the apartment. Pursuant to a later court order, mother and father had joint custody of daughter, but father was to have no direct contact with mother. Instead, mother was to drop off daughter with father's sister at her residence, and father was to pick up daughter from there.

¶ 3. Both parties agree that early in the morning of March 20, 2014, father picked up daughter directly from mother's residence, notwithstanding the court order that pickup was to be arranged through father's sister. Father claimed that this pickup was specifically at mother's demand. Mother alleged that at 7:10 a.m. that day, a staff member from daughter's child-care facility called her and told her that father had called the facility to say that he was not bringing daughter to the facility and to ask the staff not to tell mother. Father stated that he had noted worrisome signs in daughter, so he called the Department for Children and Families (DCF) Hot

2

Line for advice. Father alleged that the DCF Hot Line employee told him that his daughter was showing signs of sexual abuse and recommended that he bring daughter to a doctor. According to father, the DCF employee also recommended that father contact his parole officer before bringing daughter to the doctor, which he did.

¶ 4. Later that same day, mother filed a petition for relief from abuse against father in the superior court on behalf of herself and daughter. In the petition, mother alleged that on March 8, 2014, daughter—then two years old—told mother and aunt that "Daddy hit me." Mother indicated that daughter first made the statement in the car after mother picked up daughter from a visit with father and then repeated it when they arrived at home. Mother also indicated that she and aunt made an audio recording of daughter repeating her statements that day and a video recording of daughter repeating her statements the next day. Mother did not include copies of the recordings in her petition for relief from abuse.

¶ 5. Also on March 20, 2014, mother and aunt contacted father's parole officer with an oral version of substantially the same complaint and submitted the recordings to the parole officer. Father was arrested for a parole violation based on mother's complaint. On the original violation report, the parole officer wrote that father's violation of parole was based on the fact that "[o]n March 20, 2014 [mother] reported to the Department of Corrections that [father] had struck his daughter." The report continued, "[p]lease refer to the attached audio and video files." On the supplemental violation report, the parole officer also noted that father violated the parole condition stating that "[y]our Supervising Parole officer has the authority to restrict people you associate with." The parole board met on April 1, 2014, to discuss father's case and subsequently revoked his parole because he had remained in contact with mother in violation of a court order—namely, the parole condition. Father was reincarcerated.

¶ 6. Father then filed two different suits. The first was against mother for money damages based on defamation and negligence, as well as monetary claims. These monetary claims

were premised on his allegation that he had loaned money to mother during their relationship. The second was against aunt for money damages for defamation and negligence.[1] Father claimed that aunt had aided mother in falsifying the video and had supported mother in filing her petition for relief from abuse. As part of his suit against aunt, father filed a motion for a court-appointed expert to show that the recordings were falsified because daughter had been coached into saying "Daddy hit me." This motion was denied. Mother then filed a motion to dismiss for failure to state a claim, and aunt filed a motion for summary judgment.

¶ 7.    The trial court converted mother's motion to dismiss into a motion for summary judgment and consolidated the two suits based on common questions of law and fact. The court then granted mother's and aunt's motions for summary judgment, even after assuming for purposes of assessing the summary judgment motions that the audio and video recordings had been "falsified as alleged." In doing so, the court determined that mother's statements to law enforcement officers—including the video recordings, even if false—were protected by absolute privilege. It recognized that the modern trend is toward recognizing absolute privilege in the case of false statements made in these circumstances: the Restatement (Second) of Torts and a growing number of jurisdictions recognize absolute privilege for statements made as preliminary steps to judicial or quasi-judicial proceedings. See, e.g., Ledvina v. Cerasani, 146 P.3d 70, 73 (Ariz. Ct. App. 2006); Hopkins v. O'Connor, 925 A.2d 1030, 1036 (Conn. 2007); Hartford v. Hartford, 803 N.E.2d 334, 338 (Mass. App. Ct. 2004).

¶ 8.    The court also cited several public policy reasons for determining that mother's statements were protected by absolute privilege. It reasoned that absolute privilege minimizes the exposure of victims of violence to the risk of defamation claims when they report incidents of abuse. In the court's view, if only qualified privilege were to apply, then defamation claims would

---

[1] Father does not brief any appeal of the trial court's dismissal of his negligence claims. Therefore, we do not consider it.

4

survive summary judgment relatively easily on the fact question of "good" or "bad" motive. According to the court, the reasonable and economic use of judicial resources militates in favor of addressing the truth or falsity of allegations underlying a relief-from-abuse petition at the proceeding on the petition, not years later in a defamation lawsuit.

¶ 9.     On appeal, father argues that the court erred by (1) finding that mother's recordings and statements should be protected by absolute privilege and that they should instead be protected by qualified privilege, and (2) denying his monetary claims against mother.[2]  In reviewing a grant of summary judgment, we apply the same standard as that used by the trial court. Allstate Ins. Co. v. Vose, 2004 VT 121 ¶ 13, 177 Vt. 412, 869 A.2d 97.  We uphold the grant only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  In assessing whether a genuine dispute as to any material fact exists, we recognize that "[t]he moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences." Price v. Leland, 149 Vt. 518, 521, 546 A.2d 793, 796 (1988).  We therefore take "all allegations made by the nonmoving party as true." Vose, 2004 VT 121, ¶ 13.  In the present case, then, we do not actually determine the veracity of the statements or the recordings at issue, but we do accept as true all allegations by father regarding the statements and recordings for purposes of reviewing the court's grant of summary judgment.

I.

¶ 10.     We first address father's argument that the court erred in finding that the recordings and statements should be protected by absolute privilege and that they should instead be protected

---

[2] Defendant also briefly states, without making any specific argument, that the trial court erred in denying his motion for a court-appointed expert.  Under the plain language of V.R.E. 706(a), the court's power to appoint an expert is entirely discretionary.  We discern no basis in the record to support a conclusion that the court abused its discretion in denying the appointment of an expert in this case.

by only qualified privilege. Absolute privilege provides a complete shield against defamation actions but qualified privilege can be overcome by a showing of malice. Lent v. Huntoon, 143 Vt. 539, 548, 470 A.2d 1162, 1169 (1983). Moreover, if absolute privilege applies in the present case, summary judgment in favor of mother and aunt would be appropriate for father's defamation claim because one of the six elements of defamation is "lack of privilege in the publication." Id. at 546-47, 470 A.2d at 1168.

¶ 11. In this case, all the statements and recordings at issue were made within the context of parole board hearings and hearings on petitions for relief of abuse. Parole board hearings are administrative hearings and are therefore considered quasi-judicial proceedings. See Watker v. Vt. Parole Bd., 157 Vt. 72, 74-75, 596 A.2d 1277, 1279 (1991). Similarly, petitions for relief from abuse are heard in judicial proceedings by courts. See, e.g., Rollo v. Cameron, 2013 VT 74, 194 Vt. 499, 82 A.3d 1184; Coates v. Coates, 171 Vt. 519, 769 A.2d 1 (2000). As such, all the statements and recordings at issue in this case were made as preliminary steps to judicial or quasi-judicial proceedings.

¶ 12. In Vermont, we have long recognized that statements within a judicial proceeding are absolutely privileged if they are relevant to the matter at hand. See Mower v. Watson, 11 Vt. 536, 540 (1839). And courts in many other states have concluded that absolute privilege is the appropriate level of protection for statements made in the preliminary stages of judicial and quasi-judicial proceedings. See, e.g., Cutts v. Am. United Life Ins. Co., 505 So.2d 1211, 1215 (Ala. 1987); Ledvina, 146 P.3d at 73; Hopkins, 925 A.2d at 1036; Correllas v. Viveiros, 572 N.E.2d 7, 10 (Mass. 1991); Fynn v. Boglarsky, 129 N.W. 674, 676 (Mich. 1911); Cole v. Star Tribune, 581 N.W.2d 364, 369 (Minn. Ct. App. 1998); McGranahan v. Dahar, 408 A.2d 121, 124 (N.H. 1979); Pulkrabek v. Sletten, 557 N.W.2d 225, 226 (N.D. 1996); Vasquez v. Courtney, 557 P.2d 672, 673 (Or. 1976).

¶ 13. Moreover, the Restatement supports the extension of absolute privilege to "communications preliminary to a proposed judicial proceeding":

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is <u>absolutely privileged</u> to publish defamatory matter concerning another in communications <u>preliminary to a proposed judicial proceeding</u>, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (1977) (emphasis added). This is relevant because "[w]e frequently have adopted provisions of the Restatement (Second) of Torts with respect to defamation." <u>Skaskiw v. Vt. Agency of Agric.</u>, 2014 VT 133, ¶ 9, 198 Vt. 187, 112 A.3d 1277.

¶ 14. In light of this case law and guidance from the Restatement, we hold that absolute privilege applies to the statements and recordings in this case. Public policy favors the extension of absolute privilege to statements and recordings made or produced in the context of parole violation reports and petitions for relief from abuse. Unhindered communication with parole officers and in petitions for relief from abuse is critical to ensure that members of the public can communicate sensitive and unflattering information to parole officers about parolees without fear of reprisal. Qualified privilege would not adequately protect against this risk. With qualified privilege, a defamation suit would be able to proceed much further than it would if absolute privilege were applied. See <u>Hartford</u>, 803 N.E.2d at 339 ("[C]ommunity members must feel free to provide pertinent information about a parolee to a parole officer without fear of reprisal, including a defamation suit."). False reporting is a legitimate concern, but its effects are limited by procedural safeguards in instances where false statements are made in the preliminary steps of a judicial or quasi-judicial proceeding. In both parole board hearings and hearings on petitions for relief from abuse, the parole board or judge can rule in favor of the defendant and immediately release the defendant if he or she has been incarcerated as a result of the false accusations.

7

¶ 15. Finally, we are not swayed by the three cases father cited at oral argument in support of his position that the statements and recordings in this case should be subject to qualified privilege. In Mauvais-Jarvis v. Wong, the court concluded that qualified privilege was the appropriate level of protection for false statements made during a disciplinary proceeding for research misconduct at a private university. 2013 IL App (1st) 120070, ¶ 73, 987 N.E.2d 864. However, a proceeding at a private university is neither a judicial nor a quasi-judicial proceeding, and it does not offer the same procedural safeguards available with a parole board hearing. See id. ¶ 89. In Kuwik v. Starmark Marketing & Administration, Inc., the false statements were made as part of an insurance claim, and the court concluded that they were protected by qualified privilege. 619 N.E.2d 129, 135 (Ill. 1993). Like Mauvais-Jarvis, Kuwick does not support father's argument because an insurance claim is not a judicial or quasi-judicial proceeding. Likewise, People v. Adams, is not relevant because it concerns the immunity of a witness rather than absolute or qualified privilege. 423 N.E.2d 379 (N.Y. 1981).

## II.

¶ 16. We next address father's argument that the court erred in dismissing his monetary claims against mother. In his July 2014 pro se unverified complaint against mother, father alleged, in relevant part, that: (1) in August 2013, he borrowed $1000 from his boss to pay off mother's credit card bill to enable them to obtain a loan to buy a house together; (2) in December 2013, he loaned mother $900, $650 of which he borrowed from his boss, so that she could pay her rent that month; (3) in December 2013, mother refused to have the power switched over to her name after Department of Corrections (DOC) employees forced him to leave the house in which they had been living; (4) in December 2013, mother refused to report to the State of Vermont that he was no longer living in the house so that she could collect his fuel assistance payments for that month and the first two months of 2014; and (5) mother owes him half of the $180 in storage fees that he paid for a storage unit that he and mother shared between June 2013 and February 2014.

¶ 17.   In her pro se answer, mother responded, in relevant part, that father, who was removed from their home by DOC employees on December 16, 2013, was on the lease until the end of February 2014 and had agreed to pay the December 2013 rent.  She stated that because he was on the lease, he was "responsible for his portion of the rent."  She also stated that father had paid off her credit card bill without her asking him to do so and that she was never interested in buying a house with him because their relationship was not good.

¶ 18.   In July 2015, mother, now represented by counsel, filed a motion to dismiss father's complaint for failure to state a claim upon which relief could be granted.  Mother stated that the facts alleged in father's complaint were "essentially not disputed," but that the monetary claims should be dismissed nonetheless because: (1) father had no standing to make claims on behalf of his electric company, his boss, or the State of Vermont; and (2) he was obligated to pay his rent, his storage fees, and his car payments, and had not alleged that mother made a promise to pay based on consideration.  In her accompanying statement of undisputed facts, mother stated, in relevant part, that father was jointly and severally liable for payment of rent, was the only person who signed the storage unit agreement, and suffered no out-of-pocket expenses with respect to the electric bill, the fuel assistance payments, and the money borrowed from his boss.

¶ 19.   In response to mother's motion, father argued that mother had failed to submit affidavits demonstrating the absence of disputed material facts, and that in fact there were disputed material facts precluding summary judgment.  He stated that DOC employees forced him to move out of the parties' home in early December, but that he agreed to lend mother money to cover the rent that month.  He also stated that mother's name was on the storage lease.  He acknowledged that he did not suffer any out-of-pocket expenses with regard to the electric bill and fuel expenses, but contended that he did suffer out-of-pocket expenses with regard to paying off mother's credit card bill because he had promised to pay his boss back the money he borrowed.  Father reiterated in an accompanying affidavit that: (1) mother promised to pay him back the $900 he lent her for

9

the December 2013 rent, $650 of which he borrowed from his boss; (2) mother asked him to borrow $1000 from his boss to pay off her credit card bill; and (3) both he and mother had property in the storage unit and split the cost for the unit.

¶ 20. The trial court converted mother's motion to dismiss into a motion for summary judgment. In addressing father's monetary claims against mother, the court noted that neither mother nor father had filed an affidavit as to their own testimony. Treating the monetary claims as sounding in promissory estoppel, the court granted summary judgment to mother, concluding that, as a matter of law, even assuming mother had made a promise that induced father's forbearance, father would be unable to show that "injustice can be avoided only through the enforcement of a promise." Green Mountain Inv. Co. v. Flaim, 174 Vt. 495, 497, 807 A.2d 461, 464 (mem.) (2002) (setting forth elements of promissory estoppel). In so ruling, the court reasoned that: (1) father had a joint obligation on the rent and thus was required to pay whether he lent mother the money or not, and father himself had not been required to repay the loan he took from his employer; (2) father voluntarily paid the parties' shared obligation for the storage unit; (3) father admitted he suffered no loss with respect to the electric bill and fuel assistance; and (4) father paid off mother's credit card bill for the parties' joint benefit and "[i]t also appears undisputed that [father] borrowed the money from a third party to make the payment and has not been required to pay it back," making his claim an uncompelling one for unjust enrichment.

¶ 21. On appeal, with respect to the monetary claims, father argues that the court "erred in stating promissory estoppel and personal enrichment," and that those are "issues for a jury not a court's determination." Father asserts that the loans in question in fact have to be paid back or were paid back by him on mother's behalf. Mother does not respond to father's appellate arguments regarding his monetary claims.

¶ 22. The gist of father's brief argument on appeal is that there are material facts in dispute with respect to his claim that mother failed to reimburse him, as promised, for monies he

10

paid or lent her with respect to the December 2013 rent, mother's credit card bill, and the storage unit. We agree with father that, based on the record before us, we cannot uphold the court's award of summary judgment concerning these claims. See Lamay v. State, 2012 VT 49, ¶ 6, 191 Vt. 635, 49 A.3d 559 ("We review summary judgments under the same standard as the trial court, affirming when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to the benefit of all reasonable doubts and inferences." (citation omitted)).

¶ 23. As an initial matter, we cannot determine from the record whether the court erred in treating father's claims as sounding in promissory estoppel rather than breach of contract. The court did not explain its reasoning, but apparently it based its decision on its determination that there was no consideration for any promise mother allegedly made with regard to father's payment of the December 2013 rent, mother's credit card bill, and the storage unit bill. See Big G Corp. v. Henry, 148 Vt. 589, 594, 536 A.2d 559, 562 (1987) (stating that "doctrine of promissory estoppel evolved to prevent injustice and unconscionable advantage where an exchange of promises did not create a binding contract" and thus doctrine applies only "where there is no contract, where the promise is gratuitous, and there is unbargained-for reliance" (quotations and citations omitted)); Estoppel—Promissory Estoppel, Black's Law Dictionary (10th ed. 2014) ("The principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment."). Although "[w]hether there is consideration for a contract is a question of law, not fact," Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc., 158 Vt. 594, 598, 614 A.2d 812, 814 (1992), the parties' limited filings, which did not comply with Rule 56, were insufficient for the court to determine whether consideration existed in this case for the alleged promises by mother.

11

¶ 24.   In granting mother summary judgment on the monetary claims, the court relied on the equitable "justice" element of promissory estoppel, which is not be an element of a contractual claim.  The fact that father was on the lease does not necessarily mean that the parties did not have a contractual agreement requiring mother to pay father back for his payment of mother's portion of the rent.  The court also indicated that it appeared father would not have to pay back the loans to his boss, but father claims he is obligated to do so and suggests that, with respect to some of the loans, he has done so.  Given the inconsistencies and uncertainties regarding the material facts surrounding the alleged loans to mother, summary judgment was inappropriate at this juncture.

The superior court's December 10, 2015 decision is affirmed in all respects, except for father's monetary claims concerning the December 2013 rent payment, the payment of appellee's credit card bill, and the storage unit payment.  The court's award of summary judgment to mother on those claims is reversed and the matter is remanded for further proceedings concerning only those claims.

FOR THE COURT:

_____
Chief Justice

12