STEVEN C. FUSTOLO *vs.* FREDDA HOLLANDER.

Suffolk. November 2, 2009. - February 1, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government.

In a civil action in which the plaintiff real estate developer alleged that the defendant, in five newspaper articles that she authored, defamed the plaintiff, the judge correctly denied the defendant's special motion to dismiss pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H, where the defendant failed to demonstrate that the plaintiff's claims were based solely on the defendant's right of petition within the meaning of the statute, in that her articles did not contain statements seeking to redress a grievance or to petition for relief of her own, and there was nothing about her role as a staff reporter of an independent newspaper that by its nature rendered her a representative or agent of any community organization that she might cover. [864-871]

CIVIL ACTION commenced in the Superior Court Department on August 24, 2006.

A special motion to dismiss was heard by *Geraldine S. Hines,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Harvey S. Shapiro* for the defendant.

*Bruce W. Edmands (Sandy S. Shen* with him) for the plaintiff.

*Paul Holtzman, Sarah R. Wunsch, & Christopher T. Bavitz,* for American Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

BOTSFORD, J. The defendant, Fredda Hollander, appeals from the denial of her special motion to dismiss under G. L. c. 231, § 59H (§ 59H), the "anti-SLAPP" statute,[1] claiming that the conduct for which she was sued — writing five newspaper

---

[1]The acronym "SLAPP" stands for "Strategic Lawsuit Against Public Participation." *Duracraft Corp.* v. *Holmes Prods. Corp.,* 427 Mass. 156, 160 n.7 (1998).

articles that contained allegedly defamatory statements about the plaintiff, Steven Fustolo, and his properties located in the North End section of Boston — constitutes petitioning activity protected by the statute. We agree with the motion judge that the defendant did not exercise her "right of petition" within the meaning of § 59H, and affirm the denial of the special motion.

*Background.*[2] Hollander, a longtime resident of the North End, has actively participated in community activities there since the early 1990's. In 1996, she cofounded the North End Waterfront Residents' Association, Inc. (NEWRA), a nonprofit organization that takes positions on local zoning and development issues.[3] As a NEWRA member, Hollander submitted several articles and photographs to the Regional Review, a community newspaper, seeking to use local press coverage to communicate NEWRA's activities, meetings, and recommendations to community members and elected officials.[4] Phillip Orlandella was the publisher of the Regional Review.[5] In 1997, Orlandella hired Hollander to work for the Regional Review as a paid reporter. Orlandella instructed her to write, and she did write, objective, factual news accounts of neighborhood meetings, including NEWRA meetings. Hollander remained a NEWRA member, but did not disclose this in her articles, or write her articles as expressions of her personal opinion or the opinion of NEWRA. At the same time, in choosing to write about development and licensing issues, Hollander sought to bring issues that she considered important to the attention of residents, politicians, and government officials, to encour-

[2]The background facts are derived from the affidavits and other materials submitted by the parties in support of and opposition to Hollander's special motion to dismiss.

[3]The bylaws of the North End Waterfront Residents' Association, Inc. (NEW-RA), state its purpose as "enhancing, maintaining and promoting the living conditions within the North End/Waterfront and promoting a neighborhood attitude of mutual respect and lawful regard for the rights of each other to the foregoing ends." NEWRA is not a government body.

[4]In 2006, the Regional Review was distributed primarily to public establishments in the North End, Beacon Hill, West End, and waterfront neighborhoods of Boston.

[5]Fustolo amended his complaint to add claims of interference with business relations and violation of G. L. c. 93A, based on the same articles, as well as additional claims against the publisher, Orlandella, who cross-claimed against Hollander for indemnification. All claims against Orlandella, and Orlandella's cross claims against Hollander, have been dismissed by agreement.

age public participation on such issues, and to cause government officials to take note of them.

Fustolo is an accountant and a real estate developer who, in 2006, owned or held beneficial ownership interests in several properties in the North End, including three properties located respectively at 101 Prince Street, 3 Snow Hill Street, and 11 Sheafe Street. In May and June of 2006, Hollander wrote five articles for the Regional Review that mentioned Fustolo and these properties. The first of the articles, entitled, "City condemns 11 Sheafe St. building and orders tenants to vacate immediately," appeared on May 9, 2006. The article addressed renovations undertaken by a limited liability corporation of which Fustolo served as president to convert the building at 11 Sheafe Street into condominium units. According to Hollander, the renovations forced long-time tenants out of the building, three of whom were still living there on May 2 when the city of Boston inspectional services department (ISD) condemned the building and ordered them to vacate. In the second article, published May 23, 2006, and entitled, "City ducks NEWRA's question on 11 Sheafe Street," Hollander reported that NEWRA discussed the Sheafe Street project at its May meeting and that ISD, while invited to speak, did not send a representative. The third article also appeared on May 23, reporting on a meeting held by another community organization, the North End/Waterfront Neighborhood Council (NEWNC), at which NEWNC voted to support a development project of Fustolo's relating to the property at 101 Prince Street. The fourth article at issue, dated on June 20, 2006, was entitled, "ISD applies for criminal complaints against owner," and concerned the 11 Sheafe Street property. In the fifth article, also published on June 20, Hollander reported that at NEWRA's June meeting, members voted to oppose Fustolo's 101 Prince Street project.

In August, 2006, Fustolo filed this action against Hollander in the Superior Court, alleging that in the five articles, Hollander falsely reported certain facts and statements by city officials and others, sought to paint him in an adverse light, and thereby defamed him. Fustolo further alleged that the articles caused "[w]idespread opposition . . . in connection with the 101 Prince Street and Snow Hill Street development plans and

variance petition" and "[a]s a direct and proximate result, [he] was compelled to withdraw the application for variances prior to a hearing scheduled to take place before the Boston Board of Appeal on July 25, 2006."

Hollander responded with a special motion to dismiss under § 59H, contending that Fustolo's claims had no substantial basis other than petitioning activity protected by the statute. Hollander argued that writing the articles implicated and gave expression to her personal interests as a "member of the community keenly interested in its development and protection." She also contended that her reporting "played an essential role in facilitating the petitioning activity of NEWRA and other members of the community . . . who had an interest in the relevant agencies' scrutiny of Fustolo's project applications and enforcement of the laws relevant to those activities."

After hearing, a judge in the Superior Court denied Hollander's special motion to dismiss, concluding that Hollander did not engage in petitioning activities "on her own behalf as a citizen" because she wrote the articles in her capacity as a reporter, and also because she received compensation for doing so. The judge rejected Hollander's claim that she facilitated the petitioning activities of others, determining that Hollander did not represent or speak on behalf of NEWRA or NEWNC in writing the challenged articles. Hollander brought an interlocutory appeal from the denial. See *Fabre* v. *Walton*, 436 Mass. 517, 521-522 (2002), *S.C.*, 441 Mass. 9 (2004). We granted Hollander's application for direct appellate review.

*Discussion.* The Legislature enacted the anti-SLAPP statute "to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities."[6]

---

[6]SLAPP suits "generally target individuals for 'reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.' " *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 121-122 n.13 (2002), quoting *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161-162 (1998). The "typical mischief" the Legislature intended G. L. c. 231, § 59H (§ 59H), to address "was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Duracraft Corp.* v. *Holmes Prods. Corp., supra* at 161.

*Kobrin* v. *Gastfriend*, 443 Mass. 327, 331 (2005) (*Kobrin*), citing preamble to 1994 House Doc. No. 1520. Section 59H allows a party to file a special motion to dismiss if "the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." G. L. c. 231, § 59H. To prevail, the special movant must make a threshold showing through pleadings and affidavits that the claims against it "are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 167-168 (1998). If she satisfies that burden, the opposing party must then show by a preponderance of evidence that the special movant's petitioning activities "lacked any reasonable factual support or any arguable basis in law." *Baker* v. *Parsons*, 434 Mass. 543, 553-554 (2001).

We are concerned in this case with the threshold question whether Hollander established that Fustolo's claims were based solely on the exercise of her "right of petition" within the meaning of § 59H.[7] The statute defines "a party's exercise of its right of petition" to encompass the following:

> "[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] *any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding*; [4] *any statement reasonably likely to enlist public participation in an effort to effect such consideration*; [5] or any other statement falling within constitutional protection of the right to petition government" (emphasis added).

Hollander claims that the third and fourth definitions apply.

---

[7]More particularly, because there is no dispute that Fustolo's claims against Hollander are wholly based on the five articles she wrote, the precise issue raised here is whether those articles constitute petitioning activity within the ambit of § 59H.

In view of Fustolo's allegation in his complaint that he was injured because Hollander's articles stirred up so much community opposition to his projects that he had to withdrew his application for zoning variances, we assume without deciding that the contents of the articles fit at least within the fourth definition — that is, the articles were "reasonably likely to enlist public participation in an effort to effect . . . consideration [by a legislative, executive or judicial body]."[8] But this does not end the inquiry. Section 59H begins by stating that it applies to "any case in which a party asserts that the civil claims . . . against said party are *based on said party's* exercise of *its* right of petition under the constitution of the United States or of the commonwealth" (emphasis added). As stated in *Kobrin*, 443 Mass. at 332-333:

> "We [have read] the phrase . . . as restricting the statute's coverage to defendants who petition the government on their *own behalf* [emphasis added]. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens. . . . The right of petition contemplated by the Legislature is thus one in which *a party seeks some redress from the government* [emphasis added]. See Webster's Third New Int'l Dictionary 1690 (1993) (defining 'petition' as 'a formal written *request* addressed to an official person or organized body' and as 'a formal written request addressed to a magistrate or court *praying for . . . relief*' " [emphasis in *Kobrin*]).

In the *Kobrin* case, we concluded that where an expert witness, hired by the Board of Registration in Medicine (board) to assist with its investigation of a psychiatrist, provided testimony at a board hearing for which he was subsequently sued, the expert "was not exercising *his* right to petition or to seek any redress from the board (a government body), but rather was acting solely on behalf of the board" (emphasis in original). *Id.* at 333. See *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 365 (2007) (*Fisher*).[9] As Hollander argues, there are differences between her and the

_____

[8]The third definition as well may be applicable, but in view of our conclusion, discussed *infra*, that for other reasons Hollander was not engaged in petitioning activity, we need not consider it.

[9]In *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 365 (2007), the Appeals Court

defendant expert witness in *Kobrin*, as well as the defendant investigating State police officer in *Fisher*. Among other things, Hollander was not retained or employed by the government agency or entity that was claimed to be the target of the alleged petitioning. But the salient and dispositive point is that, as was true of the defendants' testimony in both *Kobrin* and *Fisher*, Hollander's articles did not contain statements seeking to redress a grievance or to petition for relief *of her own*. See *Kobrin, supra*; *Fisher, supra* at 364 ("As in *Kobrin*, [the defendant's] conduct was not an attempt to redress a wrong he suffered, nor was he petitioning on his own behalf"). Indeed, she expressly stated in her affidavit that in writing all her articles, she was "always careful to present an objective description of the subject matter, including the positions of both sides where applicable," and that while she had personal views on the issues she covered, "they were not reflected in the articles I wrote."

Hollander attempts to distinguish *Kobrin*, arguing that unlike the defendant expert witness there, as a North End resident and NEWRA member she had a personal interest in the development issues that she wrote about in the articles, and thereby had much more "than a mere contractual connection to the . . . petitioning activity." *Kobrin*, 443 Mass. at 338. However, the outcome in *Kobrin* ultimately did not turn on whether the expert had or lacked a subjective and sincere personal interest in the investigation for which he was hired to assist; the fundamental reason that he was disqualified from obtaining protection under § 59H was that he was not "petitioning" in the sense of personally seeking redress of a grievance of his own. See *id*. at 338 n.14 ("We care not whether a defendant . . . is 'sincere' in his or her statements; rather, our only concern, as required by the statute, is that the person be truly 'petitioning' the government in the constitutional sense"). See also *Fisher, supra* at 365, quoting *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 122 (2002) ("[the defendant] is not assisted by his claim that his conduct was

held that the defendant State police officer, who was assigned to investigate a citizen's complaint about the plaintiff (a fellow officer) and who subsequently made statements to State police internal affairs officers and testified at a disciplinary hearing against him, could not dismiss the plaintiff's libel complaint under § 59H because he was not " 'petitioning' as a citizen to redress a wrong that was done to him personally. Rather, he was carrying out his responsibilities as a State police officer."

motivated in part by a personal interest because at this initial stage 'the motive behind the petitioning activity is irrelevant' ").[10] The same holds true of Hollander.

Relying in particular on two decisions of the Appeals Court, *Plante* v. *Wylie*, 63 Mass. App. Ct. 151 (2005), and *MacDonald* v. *Paton*, 57 Mass. App. Ct. 290 (2003), Hollander argues that regardless of whether she personally was petitioning for relief, as a journalist reporting on meetings of community groups, she was in effect a messenger, giving voice to and providing space for the petitioning activity of those groups and their members. This claim fails.

In *Plante* v. *Wylie, supra,* the Appeals Court held that § 59H protected an attorney sued for voicing the positions of his client in circumstances that, if the client had spoken directly, would have qualified as petitioning activity. *Plante* v. *Wylie*, 63 Mass. App. Ct. at 156-161. We agree with the judge that, unlike the attorney in *Plante*, Hollander "may not take refuge under the anti-SLAPP statute by portraying herself as a messenger of NEWRA in her capacity as a reporter." A reporter occupies a different position with respect to a petitioning party than does that party's attorney. By its nature, the attorney-client relationship is one in which the attorney expressly represents his or her client and serves as the client's agent. In situations (as in the *Plante* case) where a client is an organization rather than an individual, the client may only be able to speak, and petition, through its attorney. See *Keegan* v. *Pellerin*, 76 Mass. App. Ct. 186, 192 (2010) (security officer employed by condominium trust who reported "Peeping Tom" to police "was petitioning either on his own behalf, and entitled to the statute's shelter for his individual activity, or . . . on behalf of his employer, the trust. If the latter, then the trust, which can act only through its agents, paid or other . . . was the petitioner and was exercising

[10]Cf. *Fabre* v. *Walton*, 436 Mass. 517, 523-524 (2002), *S.C.,* 441 Mass. 9 (2004) (plaintiff could not defeat defendant's argument that plaintiff's claims were wholly based on defendant's petitioning activities by alleging that defendant's motive in filing G. L. c. 209A complaint was not to seek relief but to injure plaintiff's reputation and job prospects: "Notwithstanding [the plaintiff's] allegations concerning the motive behind [the defendant's] conduct, the fact remains that the *only* conduct complained of is [the defendant's] petitioning activity").

a petitioning right it undoubtedly possessed" [citation omitted]). There is nothing about the role or function of a staff reporter of an independent newspaper that by its nature renders the reporter a representative or agent of every, or indeed any, community organization that the reporter may cover, particularly where, as here, the reporter affirmatively denies representing a particular viewpoint. Contrast *Baker* v. *Parsons*, 434 Mass. at 545-547 & n.5, 551 (comments made, opinions expressed, and positions urged directly by scientist on staff of environmental research organization who was solicited for comments by official involved in government permit application process represented petitioning activity within protection of § 59H).

Nor does *MacDonald* v. *Paton*, *supra*, help Hollander. In that case, the Appeals Court held that statements the defendant posted on her Web site — a site described as a "technological version of a meeting of citizens on the Town Green, a space where concerned individuals could come together to share information, express political opinions, and rally on town issues of concern to the community" — constituted petitioning activity protected by § 59H. *Id.* at 295. The court noted that the defendant wrote some of the Web site's content, although according to the defendant, "much of the content" was contributed by others, including the entry that led to the litigation. *Id.* at 294, 295. *MacDonald* was decided before our decision in *Kobrin*, and it does not appear that the issue whether the defendant engaged in *her own* petitioning activity was raised; at any rate, the court does not discuss it.

In sum, we conclude that Hollander has failed to satisfy her threshold burden to show that the articles on which Fustolo's suit is based constitute an "exercise of [her] right of petition under the constitution" as the phrase is defined in § 59H. Accordingly, the judge correctly denied Hollander's special motion to dismiss.

We make two additional observations. First, the motion judge based her denial of Hollander's special motion to dismiss in part on the fact that Hollander was compensated for her work as a Regional Review reporter. The judge stated that "the financial benefit [Hollander] received from the Regional Review's publication of her articles constitutes a private reason for her reporting on North End neighborhood committee meetings [and] Fustolo's complaint would thereby not be based on her petitioning

activities alone . . . ." We disagree that the compensation Hollander received disqualifies her articles as protected petitioning activity. The record offers little support for a finding that Hollander wrote the articles because she was paid to do so, and in any case, speech may constitute protected petitioning activity even if it "involves a commercial motive." *North Am. Expositions Co. Ltd. Partnership* v. *Corcoran*, 452 Mass. 852, 863 (2009).[11] Our analysis would not change if Hollander had written the same articles, pursuant to the same instructions from the publisher, as a volunteer reporter.

Finally, Hollander points to the important role that reporters and the press historically have played in our democracy in exposing issues of public concern and encouraging or sparking necessary governmental scrutiny. A determination that she is not entitled to the protection of § 59H for her acts of encouraging community participation in this case, Hollander argues, "runs the risk of undercutting or stripping the anti-SLAPP statute of a significant portion of its value." We disagree. To the extent that Hollander fears a chilling effect on reporters and the press if they are not entitled to claim the protection of the anti-SLAPP statute in cases where they write about contentious issues of public concern, we note that the common law of defamation, with its constitutional overlay, see, e.g., *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964), provides reporters with protection for both opinions and, of probable greater relevance to this case, for fair reports of public meetings of both government bodies and organizations such as NEWRA. See Restatement (Second) of Torts § 611 (1977) ("The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate

---

[11]While not determinative, a commercial motive may provide *evidence* that particular statements do not constitute petitioning activity. See, e.g., *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 250-251 (2007) (rejecting defendant attorney's characterization of Web site on which he posted allegedly defamatory statements about plaintiff debt collection agency as public forum "dedicated to sharing with others information about [the plaintiff's] business activities that [he] and other victims have provided to regulatory officials and the courts" and concluding instead that defendant "created the Web site, at least in part, to generate more litigation to profit himself and his law firm").

and complete or a fair abridgement of the occurrence reported"). See also *Jones* v. *Taibbi*, 400 Mass. 786, 794 (1987) (members of press have "various recognized privileges permitting the publication of fair reports of certain proceedings even when the accounts contain defamatory statements"). See generally *Howell* v. *Enterprise Publ. Co.*, *ante* 641 (2010). While "the Legislature intended to enact very broad protection for petitioning activities," *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 162, "the scope of the statute has its limits." *Kobrin*, 443 Mass. at 336. There is no reason to stretch the anti-SLAPP statute beyond its appropriate boundaries in order to create a level of protection for reporters beyond that to which they are currently entitled under the existing defamation law.[12]

*Conclusion.* The order denying Hollander's special motion to dismiss is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[12]Hollander points to several California cases to support her claim that § 59H protects reporters. However, California's anti-SLAPP statute, by its terms, has a broader scope than § 59H, expressly reaching "free speech" in addition to "right of petition." See Cal. Code Civ. Proc. § 425.16 (West 2004 & Supp. 2010). The Massachusetts Legislature did not include "free speech" in § 59H.