Salinger, Kenneth W., J.
Plaintiffs are suing Adam Brook Colter and Jonathan Colter for defamation and intentional interference with advantageous relations based on statements they made on or through, and their actions in setting up and managing, a Facebook page called “Boycott Clay Nissan,” a related online petition at another website, and a Twitter account used to distribute the Colters’ Facebook posts by text messages (Tweets). Plaintiffs assert the same legal claims against James LaFlamme based on an email he sent to some of Plaintiffs’ employees in support of the Colters’ activities. The Colter brothers move to dismiss the claims against them under G.L.c. 231, §59H, the so-called anti-SLAPP (strategic lawsuits against public participation) statute. LaFlamme does not join in the motion.
The Court holds that the Colters’ activities in using online and other social media to punish or pressure Plaintiffs — by organizing a boycott of a car dealership and by making, eliciting, and sharing comments critical of Plaintiffs’ alleged employment policies, practices, and actions toward the Colters’ sister — were not an exercise of the Colters’ right to petition government and thus are not protected by the anti-SLAPP statute. The Court therefore DENIES the motion to dismiss.
1. Factual Background
Jill Colter is Adam’s and Jonathan’s sister. The Colter brothers assert on their allegedly tortious Facebook page, online petition site, and Tweets that Clay Nissan Norwood fired Jill because she has brain cancer. Plaintiffs say that assertion is false. The Colter brothers did not file any affidavit in support of their motion to dismiss, but instead rely on the facts alleged in the verified complaint.
Plaintiffs allege that Jill was interviewed for a job in early May 2011, disclosed during the interview that she was fighting brain cancer, was hired after making that disclosure, and began work at Clay Nissan on May 9, 2011. Jill was out of work on a medical disability leave from sometime in March 2012 until May 15, 2012. Plaintiffs allege that three weeks later, on June 5, 2012, Jill was fired for reasons wholly unrelated to her sickness.
Roughly two and a half weeks after Clay Nissan terminated Jill’s employment, Adam and Jonathan Colter started their “Boycott Clay Nissan” Facebook page and a related online petition that references this Facebook page. The Colter brothers have been using these web pages to urge potential customers not to do business with Clay Nissan in order to punish Clay for firing Jill Colter; at least initially they were also trying to convince Clay Nissan to rehire Jill. The Colters have made statements on these web pages asserting that Clay fired Jill because she had cancer, that Clay has a policy or practice of discriminating against cancer patients, and that Clay is unethical. They have urged readers to boycott Clay Nissan and to email or call Clay about Jill. Both of these websites have elicited numerous online responses and comments, which readers have posted on the Facebook page and the petition’s website. The Colters have a practice of deleting responses and comments that are favorable to Plaintiffs, while allowing posts critical of Clay to remain accessible to the public. The Colters launched a Twitter account in October 2012 to circulate their posts to the “Boycott Clay Nissan” Facebook page.
Plaintiffs allege that they have repeatedly asked Jill Colter to return to work and offered to make her whole by paying her all back pay, that they first did so within days after the “Boycott Clay Nissan” Facebook page was started, but that Jill never responded to those offers. They further allege that Adam and Jonathan have continued to lead readers of their boycott and petition pages and followers of their Tweets to believe that Clay refuses to rehire Jill, even though the Colter brothers know that is untrue. On or about July 26, 2012, Jill filed a charge of unlawful discrimination on the basis of physical disability against Clay Corporation with the Massachusetts Commission Against Discrimination.
2. Discussion
The Colter brothers’ activities in organizing a boycott, in leading and providing online fora for protest, *430 and in sharing their views through web pages and Tweets appear to be constitutionally protected speech, at least to the extent that they are not defamatory. See Dulgarian v. Stone, 420 Mass. 843, 847-52 (1995); cf. Snyder v. Phelps, 131 S.Ct. 1207, 1215 (2011) (“The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits”); Medical Laboratory Mgt. Consultants v. American Broadcasting Cos., Inc., 306 F.3d 806, 821 (9th Cir. 2002), and cases cited therein (same constitutional limitations on defamation claims apply to tortious interference claims). But not all speech or communicative activity protected by the Massachusetts or United States Constitutions falls within the scope of §59H.
The Colters’ motion to dismiss this action “must be denied” because they have failed “to demonstrate, through the pleadings and affidavits,” that the claims against them are based solely on “petitioning activities" aimed at influencing government officials “and have no substantial basis other than or in addition to the petitioning activities.” See, e.g., Brice Estates, Inc. v. Smith, 76 Mass.App.Ct. 394, 395-96, rev. denied, 456 Mass. 1106 (2010) (affirming denial of §59H motion on this ground), quoting Wenger v. Aceto, 451 Mass. 1, 5 (2008).
The anti-SLAPP statute applies to civil claims that are based on a party’s “exercise of its right of petition under the constitution of the United States or of the commonwealth.” See G.L.c. 231, §59H. The statute defines “a party’s exercise of its right of petition.” That definition makes clear that “the statute is designed to protect overtures to the government by parties petitioning in their status as citizens . . . The right of petition contemplated by the Legislature is thus one in which a party seeks some redress from the government.” Fustolo v. Hollander, 455 Mass. 861, 866 (2010), quoting Kobrin v. Gastfriend, 443 Mass. 327, 332-33 (2005). For the purposes of§59H, “(p)etitioning includes all ‘statements made to influence, inform, or at the veiy least, reach governmental bodies — either directly or indirectly.’ ” North American Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009), quoting Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 605 (2005).
In contrast, speech and other communicative activities that are not made to influence, inform, or reach public officials are not protected by the anti-SLAPP statute. See The Cadle Co. v. Schlichtmann, 448 Mass. 242, 250-52 (2007) (statements on web site published to attract business not covered by §59H); Burley v. Comets Community Youth Center, Inc., 75 Mass.App.Ct. 818, 822-24 (2009) (public disclosures of communications to police saying that plaintiff had been banned from rink not covered by §59H). Unlike legislatures in some other states that have enacted similar laws, “[t]he Massachusetts Legislature did not include ‘free speech’ in §59H” but instead limited the statute’s reach to the exercise of one’s narrower constitutional rights to petition government. Fustolo, 455 Mass. at 871 n.12; accord, Kobrin, 443 Mass at 333. The Court may not “read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.” Provencal v. Commonwealth Health Ins. Connector Auth., 456 Mass. 506, 516 (2010), quoting General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), and King v. Viscoloid Co., 219 Mass. 420, 425 (1914).
One’s constitutional right to petition the government protects peaceful boycotts, demonstrations, or picketing intended “to influence governmental action.” National Ass’n for the Advancement of Colored People v. Claiborne Hardware Co., 458 U.S. 886, 913-14 & n.48 (1982) (boycott of white merchants aimed at pressuring local governments to end racial segregation and discrimination); accord Edwards v. South Carolina, 372 U.S. 229, 234-36 (1963) (picketing near State House aimed at convincing state legislators to repeal racially discriminatoiy laws). Organizing or participating in a boycott or picketing for the purpose of directly or indirectly influencing a government official or body — Including such activities conducted online or through other social media- — would therefore constitute petitioning activity that is protected by the antiSLAPP statute. See, e.g., Cadle, 448 Mass. at 248 (“the right to petition may include . .. ‘engaging in peaceful boycotts and demonstrations’ ” (emphasis added) (quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998)).
Like any other speech or communicative activity, however, peaceful boycotts and picketing do not implicate any right to petition government, and thus do not fall within the scope of the anti-SLAPP statute, if they are not aimed at directly or indirectly influencing government action. For example, speech that is intended to achieve a purely commercial result, such as increasing demand for one’s services, is not petitioning activity and thus falls outside the scope of the antiSLAPP statute. Cadle, 448 Mass. at 250-52 (lawyer’s web site accusing company of fraud, and asking potential clients to contact him, was not petitioning activity); Ehrlich v. Stern, 74 Mass.App.Ct. 531, 540-42 (2009) (same). The same is true of boycotts that seek to have a negative commercial impact for its own sake, without any effort to use that impact to influence government officials. Although the “motive behind [any] petitioning activity is irrelevant” in applying §59H, North American Expositions, 452 Mass. at 863, quoting Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002), a party’s motive or purpose may be relevant in answering the threshold question of whether particular actions constitute “petitioning” within the meaning of §59H. See Fustolo, 455 Mass. at 870 n. 11; Cadle, 448 Mass. at 250-52.
The speech at issue here falls outside the scope of the anti-SLAPP statute. The undisputed, verified alie *431 gations in this case make clear that most or all of the challenged activity by the Colter brothers was not undertaken to influence, inform, or even reach government officials or bodies. The Colters’ target audience is customers or potential customers of Clay Nissan and the affiliated Clay automobile dealerships. And the Colters have not been trying to convince Clay customers to influence government action in any way. Instead, they have been trying — apparently with some success — to convince people not to do business with Plaintiffs and to diminish Plaintiffs’ reputation and good will. Nor have the Colters been trying to pressure Plaintiffs to influence any government action as a result, as in the boycott at issue in NAACP v. Claiborne Hardware. Instead, the verified allegations indicate that the Colters have merely been trying to punish Plaintiffs. The Colters’ statements and activities may or may not have been tortious, but they are not protected by §59H because they are not part of any effort to convince a government official or body to do or refrain from doing anything.
The Colters’ assertion that they are advocating on their sister’s behalf, in order to raise public awareness about the termination of Jill’s employment by Clay Nissan and thereby give Jill leverage against Plaintiffs in pressing her MCAD charge, does not bring this lawsuit within the scope of the anti-SLAPP statute. See Cadle, 448 Mass. at 254 (“publishing statements about an adversary ... in hopes of shoring up his or her own [or someone else’s] position ... or otherwise gaining a tactical advantage in an ongoing legal proceeding” is not protected by §59H). Similarly, the fact that the Colters’ online and Twitter communications address the same issues as their sister’s MCAD petition also does not mean that the Colter brothers are protected by §59H. See id. (“That a statement concerns a topic that has attracted governmental attention, in itself, does not give that statute the [petitioning] character contemplated by the statute” (quoting Global NAPS, 63 Mass.App.Ct. at 605]). Nor does the fact that the Colters are facilitating and motivating speech by other people, who are moved to express support for Jill or antipathy toward Plaintiffs, bring this case within the scope of the anti-SLAPP statute. Merely providing a forum for others to comment on issues of potential public interest does not constitute petitioning activity within the meaning of §59H. Fustolo, 455 Mass. at 868-69.[2]
Finally, even if the challenged activities by the Colter brothers could be considered part of Jill’s efforts to obtain relief from the MCAD, that still would not bring them within the scope of the anti-SLAPP statute. Since the Colter brothers have not been “personally seeking redress of a grievance of [their] own,” but instead are trying to support their sister’s grievance against Plaintiffs, their activities are not protected by §59H. Fustolo, 455 Mass. at 867. Section 59H only protects a party who is seeking relief from the government “for a grievance of his own” or “otherwise petitioning on his own behalf." Kobrin, 433 Mass. at 330, 332.
ORDER
The motion by defendants Adam Brook Colter and Jonathan Colter to dismiss the claims against them pursuant to G.L.c. 231, §59H, is DENIED.

 he contrary holding in MacDonald v. Paton, 57 Mass.App.Ct. 290, 294-95 (2003), was rejected by the Supreme Judicial Court in Fustolo, 455 Mass. at 869.