VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 22-CV-03814



Draxxion Talandar
     Plaintiff

v.

Elizabeth Manchester-Murphy
     Defendant

<u>Decision on Motion for Judgment on the Pleadings</u>
<u>Decision on Special Motion to Strike</u>

Plaintiff Draxxion Talandar was charged in December 2019 with aggravated sexual assault, sexual assault, aggravated domestic assault, and domestic assault. He was held without bail for two years, then released on conditions for an additional period of time, then found not guilty at a jury trial held in September 2022. He now alleges that the criminal charges were based upon false statements made by the complainant, Elizabeth Manchester-Murphy, when she reported her allegations to police in October 2019. Plaintiff has sued Ms. Manchester-Murphy in this civil action for defamation and intentional infliction of emotional distress. He seeks compensatory and punitive damages in a total amount of three million dollars.

Ms. Manchester-Murphy has filed a motion for judgment on the pleadings, and a special motion to strike the complaint. She contends that she is entitled to judgment as a matter of law because her statements to the police were protected by an absolute privilege, and therefore cannot form the basis for defamation liability. She also contends that this lawsuit should be characterized as a "strategic lawsuit against public participation," and that the complaint should be dismissed under the provisions of 12 V.S.A. § 1041.

In response, plaintiff contends that: (1) the absolute privilege does not apply to statements made by a complaining witness prior to the initiation of a criminal proceeding, (2) the "anti-SLAPP" provisions of § 1041 do not apply to this civil action because the complainant's report was false, and false reports are not an exercise of free speech made in connection with a public issue, and (3) the complaint should not be dismissed under § 1041 because the complainant's false report was "devoid of any reasonable factual support." He also argues that a ruling dismissing the lawsuit at this stage, either because of the absolute privilege or because of the application of § 1041, would unconstitutionally deprive him of a right to a remedy under Chapter I, Article 4 of the Vermont Constitution.

Before addressing the arguments of the parties, the court makes three preliminary observations. First and foremost is that plaintiff's lawsuit seeks compensatory and punitive damages from the person who made a criminal complaint against him for sexual assault and domestic assault. A lawsuit of this nature is "not favored in law," and is directly contrary to numerous public policies, including the substantial public interest in encouraging citizens to seek the protection of the criminal-justice system and report suspected crimes to relevant law-enforcement authorities. *Couture v. Trainer*, 2017 VT 73, ¶ 14, 205 Vt. 319; *Jacobsen v. Garzo*, 149 Vt. 205, 208 (1988); *Anello v. Vinci*, 142 Vt. 583, 587 (1983); *Ryan v. Orient Ins. Co.*, 96 Vt. 291, 297 (1923); 2 Dobbs, The Law of Torts § 429, at 1213. Defamation lawsuits based upon disclosures of domestic and sexual violence chill the constitutional rights of survivors to seek their own remedies and protections, and harm the criminal-justice system by influencing courtroom testimony through fear and intimidation, and by deterring survivors and witnesses from speaking candidly with law-enforcement officers in the first instance. A number of opinions have eloquently expressed the reasons why courts should be very cautious about the prospects for civil liability under these circumstances, e.g., *Couture*, 2017 VT 73, ¶ 14; *Jacobsen*, 149 Vt. at 208–10; *Ryan*, 96 Vt. at 297; *Briscoe v. LaHue*, 460 U.S. 325, 333–34 (1983); *Ledvina v. Cerasini*, 146 P.3d 70, 74–75 (Ariz. 2006); *McGranahan v. Dahar*, 408 A.2d 121, 128 (N.H. 1979); *Egei v. Johnson*, 192 F.Supp.3d 81, 90 (D.D.C. 2016).

Second, plaintiff's lawsuit seeks recovery from the complainant for harms suffered during the criminal proceeding while omitting any references to the independent roles and decisions of law enforcement, the prosecutor, and the judge. In particular, plaintiff makes no mention of: (1) the role of law enforcement in investigating the allegations made by the complainant, (2) the role of the elected prosecutor or their deputy in reviewing the evidence and making an independent prosecutorial decision as to whether to file charges, (3) the role of the prosecutor in making pretrial decisions, including the decision to seek to hold the defendant without bail pending trial, (4) the role of the court in reviewing and ruling upon the motion to hold the defendant without bail pending trial, along with any subsequent motions for bail review, and (5) the role of the appellate court in reviewing any of those determinations in the event of an appeal. In other words, plaintiff seeks compensation from the complainant for the consequences of decisions that were made by prosecutors and judges, who are each bound by their own professional and ethical standards, and who are themselves immune from liability. Plaintiff's theory of the case does not account for these independent decisions, and does not explain why financial compensation for these alleged harms should be paid by the complainant, who had no decisive role in filing the criminal charge, finding probable cause, filing the motion to hold the defendant without bail, or granting that request.[1] It is for these reasons that defamation and intentional infliction of emotional distress are usually understood to be unavailable theories for pursuing a claim that a plaintiff has suffered harm as the result of the wrongful initiation of a criminal proceeding. *Jacobsen*, 149 Vt. at 209–10; 2 Dobbs, The Law of Torts § 436, at 1229.

Third, there does not appear to have been anything particularly unusual about this criminal prosecution for sexual assault and domestic assault. Although the relevant affidavits and motions from the criminal case have not been provided to this court, and although this court cannot access those materials because they were evidently expunged following the not-guilty verdict, e.g., 13 V.S.A. §

---

[1] Plaintiff's theory does not explain, for example, whether either liability or the amount of damages would depend upon whether the complainant supported the request to hold the criminal defendant without bail, or opposed the request, or expressed a more-nuanced position, or expressed no opinion at all. If civil liability is to be based upon such facts, there would be serious consequences for the criminal-justice system and the truth-finding function of the courts.

7603(e)(1)(A), the parties have described the case in a fair amount of detail. It appears that the complainant made a report to police detectives regarding historical incidents of sexual and domestic assault, that the detectives investigated the matter and submitted an affidavit to the state's attorney's office, that the prosecutor filed an information based upon the affidavit and sought to hold the defendant without bail, and that the judge granted the motion after conducting a weight-of-the-evidence hearing. At the eventual trial, the evidence consisted largely of the complainant's testimony, and the defense attorney cross-examined the complainant with a variety of materials. A judge found the evidence to be sufficient to submit the matter to the jury, and the jury thereafter concluded that the state had not proven the essential elements of its case beyond a reasonable doubt.

Plaintiff now seeks an opportunity to persuade a civil jury, by a preponderance of the evidence, that the complainant lied in making her initial disclosure to the police. She has not been charged with perjury or false information to police or any other crime based upon her disclosure or involvement in these proceedings, and there is no direct evidence that she lied. Plaintiff's claim is based upon the inference to be drawn from the cumulative effect of his impeachment evidence. He seeks compensatory and punitive damages against the complainant in the amount of three million dollars. Fundamentally at issue is whether this complaint should be dismissed.

Defendant's Motion for Judgment on the Pleadings

The first question presented is whether the complaint should be dismissed because the complainant's statements to police detectives were protected by the common-law doctrine immunizing statements made by parties and witnesses in judicial proceedings. *Couture*, 2017 VT 73, ¶ 12; *Mower v. Watson*, 11 Vt. 536, 540 (1839); *Briscoe*, 460 U.S. at 330–31; *Khan v. Yale University*, 27 F.4th 805, 818 (2d Cir. 2022); *Khan v. Yale University*, 295 A.3d 855, 868 (Conn. 2023). The premise of the doctrine is that witnesses in judicial proceedings should not be subject to liability for their testimony, because even the risk of liability could discourage witnesses from testifying, or could cause them to shade their testimony in court, and therefore interfere with the truth-finding process. *Couture*, 2017 VT 73, ¶ 14; *Briscoe*, 460 U.S. at 333; *Khan*, 27 F.4th at 818; *Egei*, 192 F.Supp.3d at 90; *Ledvina*, 146 P.3d at 74; *McGranahan*, 408 A.2d at 128.

Different states have adopted different levels of protection for witness testimony. Vermont has chosen a rule of "absolute privilege," which is the most-protective approach, and which immunizes testimony even if it is false. *Couture*, 2017 VT 73, ¶ 14. The reasons for choosing this level of protection are summarized above. "False reporting is a legitimate concern" with this approach, but the risks and consequences of false reporting are mitigated by the procedural safeguards available in judicial proceedings, *id*., accord *Briscoe*, 460 U.S. at 333–34; *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.); *Egei*, 192 F.Supp.3d at 90–91; *Ledvina*, 146 P.3d at 75–76.

In this case, the complainant's disclosure was subjected to a number of independent reviews and procedural safeguards. These included that: (1) the police detectives might have concluded that the statements were not sufficiently reliable to present to the prosecutor, (2) the prosecutor might have reviewed the evidence and decided that the charges lacked probable cause, (3) the prosecutor might have decided that the admissible evidence was not sufficient to obtain and sustain a conviction, and therefore not filed the charges even though they were supported by probable cause, (4) the prosecutor might have decided not to file the charges for another discretionary reason, (5) the court might not

Order                                                                                                          Page **3** of **9**
22-CV-03814 Draxxion Talandar v. Elizabeth Manchester-Murphy

have found probable cause, (6) the court might not have found that the evidence of guilt was great or otherwise granted the request to hold the defendant without bail,[2] (7) the court might have reconsidered its hold-without-bail order if a motion for review was filed, (8) an appellate justice might have reviewed and reversed the hold-without-bail order, (9) the defendant could have filed a motion to dismiss, and presented evidence, and obtained a ruling from the court on the basis of all the evidence in the case,[3] (10) the prosecutor might have chosen at any time prior to trial to dismiss the case, including after the completion of discovery and depositions of the complaining witness, and (11) the trial court might have entered judgment of acquittal before submitting the case to the jury. In addition, in the event of serious abuses, there is the possibility that a witness could be prosecuted for providing false information to police officers, perjury, or obstruction of justice. All of these independent reviews and safeguards support the application of the absolute-privilege rule to the testimony at issue here.

Plaintiff contends that the statements in this case are not immunized because the complainant's disclosure to police was not testimony offered during a judicial proceeding, but rather amounted to statements made before the proceeding commenced. However, the privilege extends to communications made "preliminary to a proposed judicial proceeding," Restatement (Second) of Torts § 588, and there are a number of cases applying the privilege to disclosures made to parole officers and to police officers, where the disclosures were the predicate for the ensuing proceeding, e.g., *Couture*, 2017 VT 73, ¶¶ 13–14 (applying the privilege to reports made to a parole officer that precipitated a parole-violation proceeding); *Ledvina*, 146 P.3d at 74 (applying the privilege to reports made to a police officer during a police investigation that resulted in a criminal proceeding); *McGranahan*, 408 A.2d at 128 (same). Additionally, the complainant's statements to police detectives in this case were used throughout the criminal proceeding as the basis for the finding of probable cause, as well as the finding that the evidence of guilt was sufficient to support the hold-without-bail determination. In other words, plaintiff's own theory of the case alleges that he suffered harm from the courtroom uses of complainant's statements. For these reasons, the court concludes that complainant's disclosures were protected by an absolute privilege, and cannot form the basis for liability under theories of defamation or intentional infliction of emotional distress.[4] See *Mixter v. Farmer*, 81 A.3d 631, 636–37 (Md. Ct.

---

[2] Here, the court notes that, although the evidence is viewed in the light most favorable to the state when determining whether the evidence of guilt is great under 13 V.S.A. § 7553, a court deciding whether to exercise its discretion to nevertheless release the defendant on bail and conditions may consider the strength or weakness of the case, including by making assessments as to the credibility of witnesses, and by considering modifying evidence, e.g., *State v. Vialet*, 2021 VT 62, ¶ 7, 215 Vt. 648 (mem.); *State v. Auclair*, 2020 VT 26, ¶¶ 18–19, 211 Vt. 651 (mem.).

[3] Cf. *Lay v. Pettengill*, 2011 VT 127, ¶ 23, 191 Vt. 141.

[4] A difficult question arises as to whether the same reasoning would foreclose a civil action for malicious prosecution. A number of authorities have suggested, as dicta, that a claim for malicious prosecution would remain available, because the elements of that tort rest upon different considerations, e.g., *Ledvina*, 146 P.3d at 75–76; *McGranahan*, 408 A.2d at 128. Exactly whether the elements of malicious prosecution would be established in this case is not known, because the cause of action was not pled, and because the pleadings and evidentiary materials do not address the topic. An important general rule is that the tort of malicious prosecution is not available in situations where a complainant makes a report to police detectives and the decision as to whether to prosecute is made by an elected prosecutor or their deputy. Restatement (Second) of Torts § 653 cmt. d; see also, e.g., *Conway* v. *Smerling*, 635 N.E.2d 268, 271 (Mass. Ct. App. 1994). An exception to that rule may apply when the complainant is alleged to have provided false information, Restatement (Second) of Torts § 653 cmt. g, but the Vermont Supreme Court has never directly addressed whether this exception applies in Vermont. The exception itself appears to exist mainly in the form of dicta, and derives from antiquated reasoning regarding the effect of improper influences upon the prosecutor, and does not necessarily account for modern ethical and professional standards regarding the prosecutorial function and the independence of elected prosecutors. Nor does the exception acknowledge the public policies discussed above, and the malicious-prosecution tort itself is disfavored, e.g., *Jacobsen*, 149 Vt. at 208; *Ryan*, 96 Vt. at 127. In this case, the court need not decide whether to

Spec. App. 2013) (holding that the absolute privilege protects statements made during judicial proceedings from defamation claims and also from other torts, including intentional infliction of emotional distress, arising from the same conduct as the defamation claim).

Plaintiff argues that he will be deprived of a remedy if he is not allowed to sue the complainant. He had a number of opportunities during the criminal proceeding, however, to challenge the basis of his pretrial detention and the factual predicate for his criminal prosecution. He could have challenged the probable-cause finding, challenged the hold-without-bail determination, conducted discovery and taken depositions, filed motions, filed appeals, and otherwise prevailed upon the prosecutor. All of these remedies were available to him, and there is not a constitutionally-required reason why there must also be a civil claim, where other requirements are not met. Cf. *McGranahan*, 408 A.2d at 128 (explaining that "[t]he law does not, and should not, allow recovery in tort by all persons accused of crimes and not convicted," and that "[t]here is no guarantee in our society that only guilty persons will be accused and arrested").

For these reasons, the court concludes that (1) complainant's statements to police were protected by an absolute privilege, (2) plaintiff's claims do not adequately account for the involvement of independent governmental officials in investigating, prosecuting, and adjudicating the case against him, and (3) plaintiff's claims do not adequately account for the significance of the procedural safeguards employed in criminal proceedings. For these reasons, the motion for judgment on the pleadings is granted.

Defendant's Special Motion to Strike

Although the court has determined that plaintiff's complaint should be dismissed as a matter of law, the court must still address Ms. Manchester-Murphy's special motion to strike the complaint as "strategic litigation against public participation" under 12 V.S.A. § 1041, because reasonable attorney fees are available if the motion to strike is granted. *Wolfe v. VT Digger*, 2023 VT 50, ¶ 19; *Cornelius v. Chronicle, Inc.*, 2019 VT 4, ¶ 17, 209 Vt. 405; *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 28, 200 Vt. 465.

Title 12, V.S.A. § 1041 was enacted about twenty years ago as part of a nationwide response to "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and freedom to petition the government for the redress of grievances." *Felis*, 2015 VT 129, ¶ 29. In their original form, these lawsuits, known as "strategic lawsuits against public participation," involved situations where environmental activists opposed a development project, and the developer responded by suing the activists, e.g., *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361, 1363–64, 1368 (Colo. 1984); *Baker v. Parsons*, 750 N.E.2d 953, 956–57 (Mass. 2001). By suing the activists, the developer did not necessarily intend to prevail on the merits, but rather intended to impose litigation costs upon them, and thereby deter them and others from continuing their opposition to the permit, or from speaking out publicly in the future. *Felis*, 2015 VT 129, ¶¶ 29–30; *Jang v. Trustees of St. Johnsbury Academy*, 331 F.Supp.3d 312, 335 (D. Vt. 2018); *Morse Bros., Inc. v.*

---

recognize the exception, because the cause of action was not pled and the issue was neither argued by the parties nor supported by evidentiary materials. Any claim for malicious prosecution would also still be subject to dismissal under 12 V.S.A. § 1041, e.g., *Fabre* v. *Walton*, 781 N.E.2d 780, 785–86 (Mass. 2002); *McLarnon v. Jokisch*, 727 N.E.2d 813, 818 (Mass. 2000).

*Webster*, 772 A.2d 842, 846 (Me. 2001); *Duracraft Corp. v. Holmes Products Corp*., 691 N.E.2d 935, 940 (Mass. 1998).

Legislatures across the country responded to the prevalence of these lawsuits by enacting statutes that were meant to "stop" "strategic lawsuits against public participation" "early in [their] tracks." *Nader v. Maine Democratic Party*, 2012 ME 57, ¶ 14, 41 A.3d 551; *Blanchard v. Steward Carney Hosp., Inc.*, 75 N.E.3d 21, 36 (Mass. 2017). These statutes function by allowing the activists to file a special motion to dismiss upon commencement of the case, before litigation costs are incurred. The idea of the statutes is to "prevent the misuse of the courts." *Felis*, 2015 VT 129, ¶ 30; *Jang*, 331 F.Supp.3d at 335.

Like other anti-SLAPP statutes, the plain language of 12 V.S.A. § 1041 does not limit its application to the context of environmental activism. Legislatures across the country have experimented with various formulations of the substantive and procedural standards, and courts have reached different conclusions about the scope of the statute's protections, e.g., *Nader*, 2012 ME 57, ¶ 14; *Blanchard*, 75 N.E.3d at 35. In Vermont, for example, there are numerous recent cases in which media organizations have successfully used the statute to obtain dismissal of frivolous defamation actions, especially in cases involving reporting about crime and the criminal-justice system, e.g., *Wolfe v. VT Digger*, 2023 VT 50; *Rivard v. Brattleboro Reformer*, No. 23-AP-149, 2023 WL 5994216 (Vt. Sept. 2023) (unpub. mem.); *Gibbons v. Gray*, No. 23-AP-055, 2023 WL 5994062 (Vt. Sept. 2023) (unpub. mem.); *Cornelius v. Chronicle, Inc.*, 2019 VT 4, 209 Vt. 405; *Cegalis v. Hewitt*, No. 13-1-17 Wncv, 2017 WL 11636068 (Vt. Super. Ct. May 8, 2017) (Teachout, J.); *Chandler v. Rutland Herald Publishing*, No. 2015-265, 2015 WL 7628687 (Vt. Nov. 2015) (unpub. mem.). Some states agree with Vermont that their anti-SLAPP statute protects media organizations against frivolous defamation actions, e.g., *Smith v. Supple*, 293 A.3d 851, 861–62 (Conn. 2023), whereas other states have held that their anti-SLAPP statutes do not apply to these types of cases, e.g., *Gaudette v. Mainely Media, LLC*, 2017 ME 87, ¶¶ 13–18, 160 A.3d 539; *Fustolo v. Hollander*, 920 N.E.2d 837, 844 (Mass. 2010). In other words, there is a wide variety of views from one jurisdiction to another about how these statutes function, and to what types of cases they should apply. A nationwide search reveals thousands of reported opinions discussing the application of anti-SLAPP statutes to all manner of civil actions, including but not limited to employment-discrimination cases, defamation cases, and cases arising from university sexual-assault adjudications. Outcomes vary, depending upon the facts of each case and the language of the particular anti-SLAPP statute at issue.

In Vermont, § 1041 provides that a defendant may file a special motion to dismiss within the first sixty days of the proceeding. The defendant bears the initial burden of establishing that the lawsuit is indeed a "strategic lawsuit against public participation" by showing that the lawsuit arose from their exercise of the right of freedom of speech "in connection with a public issue." 12 V.S.A. § 1041(a). If that showing is made, the special motion is granted, and the case is dismissed, unless the plaintiff shows that the defendant's underlying exercise of free-speech rights was "devoid of any reasonable factual support and any arguable basis in law," and that the defendant's actions "caused actual injury" to the plaintiff. 12 V.S.A. § 1041(e)(1).

At issue first is identifying whether the lawsuit arises from the defendant's exercise of their free-speech rights, and whether that exercise was connected to a public issue. *Wolfe*, 2023 VT 50, ¶ 18; *Cornelius*, 2019 VT 4, ¶ 8, 209 Vt. 405; *Jang*, 331 F.Supp.3d at 335. Here, there are three lines of cases that the court finds to be relevant. One line of cases holds that reporting criminal activity to

police is an exercise of free speech about a public issue, and is protected by anti-SLAPP statutes, e.g., *Benoit v. Frederickson*, 908 N.E.2d 714, 718 (Mass. 2009); *Wenger v. Aceto*, 883 N.E.2d 262, 266–67 (Mass. 2008); *Fabre*, 781 N.E.2d at 785–86; *McLarnon*, 727 N.E.2d at 818; *Pylypenko v. Bennett*, 2011 WL 1338088 (Me. Super. Ct. Feb. 23, 2011). A second line of cases holds that disclosures of sexual violence are matters of widespread public interest that should be protected by anti-SLAPP statutes so as to prevent offenders from using defamation law to deter and punish survivors for speaking out about their lived experiences, e.g., *Shahid Buttar for Congress Committee v. Hearst Communications*, 2023 WL 2065044 (N.D. Cal. Feb. 16, 2023); *Goldman v. Reddington*, 2021 WL 4099462 (E.D.N.Y., Sept. 9, 2021); *Coleman v. Grand*, 523 F.Supp.3d 244, 259–60 (E.D.N.Y. 2021); *Dossett v. Ho-Chunk, Inc.*, 472 F.Supp.3d 900, 908 (D. Or. 2020); *Wentworth v. Hemenway*, 2019 WL 2368520 (Cal. Ct. App., June 5, 2019). A third line of Vermont cases mentions "reporting violations of the law" as an example of a protected activity, *Felis*, 2015 VT 129, ¶ 47, and holds that subsequent media coverage of the criminal-justice system involves matters of widespread public concerns that are protected by anti-SLAPP statutes, e.g., *Wolfe*, 2023 VT 50, ¶ 22; *Cornelius*, 2019 VT 4, ¶ 10. Each of these lines of cases provides independent support for a conclusion that complainant's disclosure of sexual and domestic violence was connected to a public issue.

Plaintiff contends that these rules do not apply to false reports to police, but this court determined in its July 12, 2023 order that the cases upon which plaintiff relies have been limited even within their own states, and do not apply to situations where, as here, the falsity of the report is controverted, e.g., *Caraway v. Haller*, 2023 WL 3088264 at *2 (Cal. Ct. App. Apr. 26, 2023); *Kenne v. Stennis*, 179 Cal.Rptr.3d 198, 209 (Cal. Ct. App. 2014); accord *Anderson v. Senthilnathan*, 2023 COA 88, ¶ 27, 2023 WL 6300872 (Colo. Ct. App. Sept. 28, 2023). Numerous other opinions have held that reports of criminal activity to the police are protected by anti-SLAPP statutes regardless of whether the plaintiff subsequently claims that the report was false, e.g., *Fabre*, 781 N.E.2d at 785; *McLarnon*, 727 N.E.2d at 818; *O'Gara v. St. Germain*, 77 N.E.3d 870, 877–78 (Mass. Ct. App. 2017). Following these cases, and the three lines of cases cited above, the court concludes that complainant's report to police detectives of sexual violence and domestic violence was a protected exercise of free speech in connection with a public issue.

At issue second is whether the plaintiff has shown that defendant's protected exercise of free speech was "devoid of any reasonable factual support and any arguable basis in law," and that it caused him actual injury. 12 V.S.A. § 1041(e). As discussed above, this standard was developed at a time when the legislative assumption was that the protected exercise of free speech would be environmental activism, and the standard was meant to identify whether the activists were engaged in a "frivolous" or "sham" opposition to the developer's underlying request for a permit, e.g., *Protect Our Mountain Environment, Inc.*, 677 P.2d at 1363–64, 1368; *Morse Bros., Inc.*, 2001 ME 70, ¶¶ 22–32; *Demoulas Super Markets, Inc. v. Ryan*, 873 N.E.2d 1168, 1170–71 (Mass. Ct. App. 2007). As applied to other exercises of the right of free speech, the implementation of the standard is more difficult to manage, and the procedure for making the determination is only somewhat described in the statute. At most, there is a limited opportunity for discovery before the motion is filed and decided, because the procedure is intended to protect defendants from unwarranted litigation costs. 12 V.S.A. § 1041(c)(2). A hearing is required, and the court must consider the pleadings and any affidavits submitted in connection with the motions, but the statute does not specify whether the hearing should be evidentiary in nature, or whether additional testimony beyond the written submissions is permitted. § 1041(d) & (e)(2). The statute also does not clarify whether the determination should be made by the court as a

factual finding, or instead under a standard analogous to motions for summary judgment, or a standard similar to motions to dismiss for failure to state a claim upon which relief can be granted, or by some other standard. Other jurisdictions have tried a variety of approaches. See, e.g., *Thurlow v. Nelson*, 2021 ME 58, ¶¶ 11–20, 263 A.3d 494 (adopting a summary-judgment-like procedure after explaining that Maine has changed its approach four times over the past twenty years); *477 Harrison Ave., LLC v. JACE Boston, LLC*, 74 N.E.3d 1237, 1247–48 (Mass. 2017) (explaining that Massachusetts courts make a factual determination by a preponderance of the evidence). Vermont's reported cases have not clarified the standard; the protected activity has typically been media reporting, and the defamation plaintiffs in those cases have generally failed to state a claim upon which relief can be granted, e.g., *Wolfe*, 2023 VT 50, ¶ 23; *Cornelius*, 2019 VT 4, ¶ 15; *Rivard*, 2023 WL 5994216 at \*1; *Gibbons*, 2023 WL 5994062 at \*1; *Chandler*, 2015 WL 7628687 at \*3; *Cegalis*, 2017 WL 11636068 at \*4–5. Any chosen standards and procedures must keep in mind that the determination does not involve an assessment of plaintiff's probability of success at trial, but rather involves the application of a rule designed to test whether the protected exercise of free speech was frivolous.

In this case, the court previously afforded the parties a limited opportunity for discovery, and both parties submitted written materials in response to the court's July 12, 2023 order. Plaintiff has additionally requested an evidentiary hearing at which he intends to prove that the complainant's statements to police were false. As referenced above, the materials submitted by plaintiff tend to impeach the defendant's credibility. At issue, however, is not whether plaintiff can prove his claims at trial, but whether the defendant's protected exercise of her constitutional rights was "devoid of any reasonable factual support." In considering this issue, the court returns to an observation made throughout this opinion, which is that the underlying criminal case included a number of procedural steps in which law-enforcement officers, prosecutors, and judges reviewed the evidence and determined that there was sufficient factual and legal support for further proceedings. Among these were that: (1) a police detective investigated the case and decided to write an affidavit and submit the investigation to the prosecutor, (2) the prosecutor reviewed the evidence, including complainant's statements, and decided to file the criminal charges, (3) a judge found probable cause, (4) a judge reviewed the evidence and determined that the weight of the evidence was sufficiently strong to hold the defendant without bail, and (5) the trial judge found that the evidence was sufficient to submit the case to the jury. Each of these determinations represents an objective endorsement as to the evidentiary and legal support for the criminal proceeding. A number of cases have held that favorable prosecutorial and judicial determinations like these established as a matter of law that the complainant's disclosure was reasonably supported and therefore protected by an anti-SLAPP statute, even though the plaintiff was ultimately acquitted of the charges. See, e.g., *Fabre*, 781 N.E.2d at 785–86; *McLarnon*, 727 N.E.2d at 818; *Franco v. Mudford*, 2004 WL 98193 (Mass. Ct. App., Jan. 21, 2004); *O'Connell v. Stover*, 2005 WL 3670938 (Mass. Super. Ct., May. 19, 2005).

A related observation is that the purpose of this analysis is to assist in the identification of lawsuits that should be dismissed before the defendant incurs litigation costs and expenses. *Desjardins v. Reynolds*, 2017 ME 99, ¶ 6, 162 A.3d 228; *Duracraft Corp.*, 691 N.E.2d at 943. Here, the court has already identified that Ms. Manchester-Murphy's disclosures cannot be the basis for liability under the rule of "absolute privilege," and that a lawsuit of this nature has a deterrent and chilling effect upon all survivors of domestic violence and sexual violence who may be considering seeking protection from law enforcement and the criminal-justice system. In other words, there is already reason to believe that this case should be dismissed, and that it involves the policies that § 1041 is meant to protect. For these

reasons, the court concludes that (1) the prior prosecutorial and judicial determinations established as a matter of law that the criminal proceeding was reasonably supported by the evidence, and (2) an evidentiary hearing meant to establish whether the disclosure was false would not assist in any of the determinations pending before the court, nor would it establish a basis for why the case should proceed to discovery and trial. Vt. R. Civ. P. 7(b)(6); *Wolfe*, 2023 VT 50, ¶ 23; *Cornelius*, 2019 VT 4, ¶¶ 15–16; *Couture*, 2017 VT 73, ¶¶ 13–14.

Finally, to the extent that plaintiff has raised constitutional challenges not otherwise discussed in this opinion, the court has considered them and does not find them to be applicable in this case. Both parties have constitutional rights that are in conflict, and the doctrines and statutes discussed in this opinion represent the balancing of those rights that have been undertaken by courts and legislatures. Plaintiff's constitutional challenges to § 1041 are diminished by the facts that (1) he has not otherwise stated a claim upon which relief can be granted, (2) the policy interests underpinning the statute are squarely implicated by this case, and (3) the court's determination regarding the second stage of the statute rests upon objective observations that would apply under any standard of review. To the extent that there may be constitutional issues at the margins of the statute, they are not presented by this case.

For these reasons, defendant's special motion to strike is granted. Defendant may submit a motion for an award of costs and reasonable attorney fees, together with itemized records supporting the request, and should do so within 15 days of the file-stamped date of this motion. Plaintiff may submit any opposition to the amount of fees within 10 days thereafter. The court will rule on the motion under the applicable standards, e.g., *Trevor v. Icon Legacy Custom Modular Homes, LLC*, 2019 VT 54, ¶ 86, 210 Vt. 614; *L'Esperance v. Benware*, 2003 VT 43, ¶ 22, 175 Vt. 292; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Electronically signed on Monday, November 27, 2023 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 11/28/23
Windsor Unit